Thomas Milton v. State of Florida—Syllabus.

---

THOMAS MILTON, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment for murder, complete in form in alleging the offence and the mortal wound inflicted, and further stating, of which said mortal wound the deceased then and there, in the county named, did languish, and languishing did live until a date mentioned, less than a year from the time when the

wound was inflicted, upon which last day the deceased, in the county stated, did die, sufficiently alleges that the death of the deceased was caused by the wound inflicted.

2. Previous declarations of an accused, evincing a purpose to kill a deceased, made at a time not too remote from the occurrence, may be shown as bearing on the question of intent to kill and the animus of the accused towards the deceased.

3. Under a count in an indictment alleging that the accused made an assault upon a third party with intent to murder him, and then and there shot and killed the deceased, it is competent to show that the third party, at the time and in the same occurrence, was shot, and also the character of the assault upon him.

4. The State summoned a witness but did not examine her, and she was placed on the stand for the accused. On cross-examination the State Attorney asked if she had been convicted of any crime in this State. This question was objected to on the ground that the State could not impeach her own witness: Held, that the State was not precluded from asking the question; and further, that the mere summoning of a witness for the State, without any examination, did not entitle the accused to treat the witness as one examined and vouched for by the State.

5. The accused offered to prove the character for lewdness of a witness summoned by the State, but who had not been examined at the time: Held, without intimating that such testimony was proper under any circumstances in a like case, that the offered testimony was entirely irrelevant and immaterial.

6. Every fact from which the jury may legitimately deduce innocence or guilt is proper to be submitted to them, and though the relevancy or materiality of a fact standing alone may not be apparent, yet when taken in connection with other facts proven its proper bearing appears, the jury should be allowed to consider it.

7. Under Chapter 4400, act of 1895, a defendant in a criminal case can voluntarily testify as other witnesses, under the rules governing witnesses generally, but can not since said act make a sworn statement without the right of cross-examination by the State.

8. Rulings of the trial court refusing to give instructions asked must be excepted to at the time of refusal, and an exception to such rulings in a motion for new trial is too late.

9. It is not error for the trial court to omit to inform the jury that a majority of their number may recommend the accused to the mercy of the court.

10. In civil jurisprudence when a man does a thing by permission of law, not by license, and after proceeding lawfully part way, abuses the permission given him, he may be deemed a trespasser from the beginning; but in criminal law such rules does not prevail, as no man is punishable criminally for what was not criminal when done, even though he afterwards adds either the act of the intent, yet not the two together.

Writ of Error to the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Martin L. Mershon*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

MABRY, J.:

Writ of error from the Sixth Judicial Circuit for Hillsborough county, the conviction being for murder in the first degree. The indictment upon which plaintiff in error was arraigned and convicted contained two counts reading, with usual beginning and the signature of prosecuting officer omitted, as follows: 1. That Thomas Milton, late of the county of Hillsborough aforesaid, in the county and State aforesaid, laborer, on the twelfth day of February, in the year of our Lord one thousand eight hundred and ninety-six, with force and arms at and in the county of Hillsborough aforesaid, in and upon one Georgie McGraw, in the peace of God and the State of Florida then and there being, feloniously, wilfully, unlawfully, of his malice aforethought, and from a premeditated design to effect the death of

her, the said Georgia McGraw, did make an assault, and that the said Thomas Milton, a certain pistol then and there loaded and charged with gun-powder and divers leaden bullets, with which said pistol loaded and charged as aforesaid he, the said Thomas Milton, was then and there armed, and in his right hand then and there held, to, against and upon her, the said Georgie McGraw, then and there feloniously, wilfully, unlawfully, of his malice aforethought, and from a premeditated design to effect the death of her, the said Georgie McGraw, did shoot and discharge, and that the said Thomas Milton, with the leaden bullets aforesaid out of the pistol aforesaid then and there by force of the gun-powder and bullets sent forth as aforesaid upon the said Georgie Mc-Graw, in and upon the body of the said Georgie Mc-Graw, about one inch below the left breast of her, the said Georgie McGraw, then and there feloniously, wilfully, unlawfully, of his malice aforethought, and from a premeditated design to effect the death of her, the said Georgie McGraw, did strike, penetrate and wound, giving to her, the said Georgie McGraw, then and there with the leaden bullets aforesaid, so as aforesaid shot, discharged and sent forth out of the pistol aforesaid, by him the said Thomas Milton in and upon the body of her, the said Georgie McGraw, about one inch below the left breast, one mortal wound of the breadth of one inch and depth of six inches, of which said mortal wound she, the said Georgie McGraw, then and there, in the county of Hillsborough aforesaid, did languish, and languishing did live until the twenty-ninth day of March, in the year of our Lord one thousand eight hundred and ninety-six, upon which said last day she, the said Georgie McGraw, in the county of Hillsborough aforesaid, did die. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Thomas Milton, her the

said Georgie McGraw in manner and form aforesaid, feloniously, wilfully, unlawfully of his malice aforethought, and from a premeditated design to effect the death of her, the said Georgie McGraw, did kill and murder, against the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

2. That Thomas Milton, late of the county aforesaid, in the circuit and State aforesaid, laborer, on the twelfth day of February, in the year of our Lord one thousand eight hundred and ninety-six, with force and arms at and in the county of Hillsborough aforesaid, in and upon one Robert Meacham, in the peace of God and the State of Florida then and there being, feloniously, unlawfully, wilfully, of his malice aforethought, and from a premeditated design to effect the death of him, the said Robert Meacham, an assault did make, and that the said Thomas Milton, a certain pistol then and there loaded and charged with gun-powder and divers leaden bullets, with which said pistol loaded and charged as aforesaid he, the said Thomas Milton, was then and there armed, and in his right hand then and there held to, against and upon him, the said Robert Meacham, then and there unlawfully, feloniously, wilfully, of his malice aforethought and from a premeditated design to effect the death of him, the said Robert Meacham, did shoot and discharge, and that the said Thomas Milton, with the leaden bullets aforesaid out of the pistol aforesaid, then and there by the force of the gun-powder and the leaden bullets sent forth as aforesaid upon one Georgie McGraw, in and upon the body of the said Georgie McGraw, about one inch below the left breast of her, the said Georgie McGraw, then and there unlawfully, feloniously, wilfully, of his malice aforethought, and from a premeditated design to effect the death of the

said Robert Meacham, did strike, wound and penetrate her, the said Georgie McGraw, giving to her, the said Georgie McGraw, then and there with the leaden bullets aforesaid, so shot forth and discharged out of the pistol aforesaid, by him, the said Thomas Milton, in and upon the body of her, the said Georgie McGraw, about one inch below the left breast of her, the said Georgie McGraw, one mortal wound of the breadth of one inch, and of the depth of six inches, of which said mortal wound the said Georgie McGraw then and there in the county of Hillsborough aforesaid, did languish, and languishing did live until the 29th day of March, in the year of our Lord one thousand eight hundred and ninety-six, upon which said last day, in the county of Hillsborough aforesaid she, the said Georgie McGraw, did die. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Thomas Milton, her, the said Georgie McGraw, in manner aforesaid feloniously, wilfully, unlawfully, of his malice aforethought, and from a premeditated design to effect the death of said Robert Meacham, did kill and murder, against the peace and dignity of the State of Florida.

The sufficiency of the indictment was questioned by demurrer and motion in arrest of judgment on the ground of a failure to allege that the death of the deceased was caused by the wound inflicted. The alleged defect in the indictment is in the latter part of both counts where it is stated, immediately after the description of the wound, "of which said mortal wound she, the said Georgie McGraw, then and there, in the county of Hillsborough aforesaid, did languish, and languishing did live until the twenty-ninth day of March, in the year of our Lord one thousand eight hundred and ninety-six, upon which said last day she, the said Georgie McGraw, in the county of Hillsborough aforesaid, did die." This,

it is said, does not exclude the possibility that the deceased came to her death by another supervening cause. In an indictment, and especially one for murder, every material fact necessary to constitute the offense must be alleged with certainty.

Section 2893 Revised Statutes provides that "no indictment shall be quashed, or judgment be arrested, or new trial be granted on account of any defect in the form of the indictment, or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal, to substantial danger of a new prosecution for the same offense;" and section 2892 enacts that every indictment shall be deemed and adjudged good which charges the crime substantially in the language of the statute prohibiting the crime, or prescribing the punishment, if any such there be, or if at common law, so plainly that the nature of the offense charged may be easily understood by the jury." Notwithstanding the language of the sections quoted it still is essential that the indictment should expressly allege matters of substance, and it can not be doubted that an indictment for murder must plainly show that the death of the deceased ensued from the wound described within a year and a day from the date of its infliction. All the old precedents that we have examined, where death was not instant, show the infliction of a mortal wound at one date, of which wound the party languished, and languishing lived until a subsequent period within a year and a day from date of infliction, and then died of said wound. An indictment should not, however, be pronounced bad merely because it is not in exact accordance with common law precedents, still a pleader in at-

tempting to follow a form should be careful not to omit
anything contained therein that is essential.   We have
found no case holding that an indictment like the one
before us was fatally defective.   The cases of Lutz v.
Commonwealth, 29 Pa. St. 441, and Tickle v. State, 6
Texas App. 623, sustain it.   It plainly enough appears
from the allegations of each count in the indictment that
the accused, on a certain date, inflicted a mortal wound
upon the body of the deceased, of which mortal wound
she languished, and languishing lived until a later date,
within a year and day, and then died.   In view of the
cases cited and under a statute like ours we are of opin-
ion that the indictment is good, and that the court did
not err in the ruling on the demurrer and the motion in
arrest of judgment.

T. Chisholm, a witness for the State, was permit-
ted to testify to an altercation between the accused and
the deceased two days before the latter was shot.   Dur-
ing this altercation the accused cursed and struck the
deceased and stated, using his language, "I will be the
death of you.   You have met up with one of the G—
d— meanest nigger men as ever you had anything to do
with in all your days."   The deceased then stated that
she was going to leave him; the accused further said, "I
don't care where in h— you go, you need not stop in
Tampa and think I won't find you; you need not go to
Jacksonville; I will find you, don't care where in the
h— you go, and when I find you I will kill you and the
son of a b— I catch with you, and be hanged with Harry
Singleton.   I know d— well he will be hung."   The
accused and deceased were not married, but lived in the
same house, and the altercation detailed occurred only
two days before the killing.   This testimony was object-
ed to on the ground that it was not relevant unless

shown to be a continuing difficulty to the final end—the killing.

The testimony was clearly admissible for the purpose of exhibiting the animus of the accused towards the deceased at the time of the killing, which can always be shown by previous declarations evincing a purpose to kill when made at a time not too remote from the occurrence. Here the threat to kill if the deceased left was made two days previous to the killing, and the testimony shows that the deceased left the house of the accused the same day she was shot.

Robert Meacham, a State witness, was permitted to tell the jury where he was shot by the accused in the same difficulty, and at the same time the deceased was shot, and also to show his wounds to the jury. This was objected to on the ground that there was no allegation in the indictment that Meacham was shot. The second count in the indictment alleged that the accused made an assault upon Meacham with intent to murder him, and then and there shot and killed Georgie McGraw. The defense was that the accused shot at Meacham in necessary self-defense, and that missing him the bullet struck the deceased. The theory of the prosecution was, and testimony introduced to sustain it, tended to show that the assault upon Meacham was not in self-defense, but from a premeditated design to kill and murder him. It was clearly competent to show the nature of the assault upon Meacham, and we discover no error in the ruling on the objection made. Killings v. State, 28 Fla. 313, 9 South. Rep. 711.

An objection is made that the court erred in permitting the State Attorney to attempt to impeach a witness named Annie Butler. The circumstances connected with this objection is that the name of the witness, Annie Butler, was placed on the indictment as a State witness,

and was summoned to court and treated as such, but was not put on the stand to testify for the State. She was introduced for the defendant, and on cross-examination was asked by the State Attorney if she had ever been convicted of any crime in this State. Defendant's counsel objected on the ground that the State could not impeach or discredit her own witness. It is evident that if Annie Butler had been convicted of a crime disqualifying her as a witness, she could not testify at all for either side. The rule in reference to impeaching your own witness can not be extended so far as to preclude the right to show, if you can, that a witness summoned by you, but put on the stand by the opposite party, is disqualified from testifying at all in the case. The statute expressly disqualifies persons as witnesses who have been convicted of certain crimes, and provides that proof of the conviction may be made by questioning the proposed witness. But in addition to this, if the State had summoned Annie Butler and treated her as a State witness, this alone would not have entitled the defendant to put her on the stand for the purpose of cross-examination. Our decision in the case of Selph v. State, 22 Fla. 537, settles this.

The deceased, Georgie McGraw, was shot in a house occupied by Lizzie Gibbs, and in the examination of one of defendant's witnesses, Johnson Williams, he was asked if he knew the character of Lizzie Gibbs as a lewd woman. This question was objected to on the ground that it was irrelevant and immaterial, and ruled out by the court. In his exception to the ruling of the court on this question plaintiff in error seeks to raise the question of his right to show the character of Lizzie Gibbs for lewdness, but we do not see that he had such right at the time the ruling was made. Lizzie Gibbs had not then been examined as a witness, and the question

was then entirely irrelevant. It is true that Lizzie Gibbs was subsequently introduced as a witness by the State, and she was examined fully on cross-examination as to her private life. She did not hesitate to answer all questions propounded to her for the defense, and no subsequent effort was made to show her general character in any respect. The question was not as to the character of the house, but as to the character of Lizzie Gibbs for lewdness, and without intimating that such a question was proper under any circumstances in a case like this, it is clear that when the question was ruled out its relevancy or material was not apparent in any aspect of the case.

Another exception to the ruling of the court on the evidence relates to the exclusion of proposed testimony by the defendant that he had given Georgie McGraw, the deceased, a pistol while she was at his house. There is no proof that the deceased was seen with any pistol at the time she was shot, or that she had given any pistol to Robert Meacham, who was with her in the room at the time. It appeared in evidence that the accused and deceased had lived together in the same house, but had separated after a quarrel. The deceased rented a room from Lizzie Gibbs and had moved into it a short time before the shooting occurred. Immediately prior thereto, from five to fifteen minutes, the deceased and Robert Meacham entered the room together in which there was a bed. The defendant, who was a policeman of the city of Tampa, testified that when he went to the door of the room in which said parties were, he found Meacham in bed and that after speaking to the deceased he was ordered out of the room by Meacham; that upon his declining to go, or saying that he would like to see Meacham put him out, the latter drew from under a pillow on the bed a pistol and tried to shoot him, defendant.

The proposed testimony of the accused, ruled out, was to the effect that he had given a pistol to the deceased while she was with him, similar to the one Meacham drew from under the pillow on the bed; that she kept the pistol in a certain drawer in the room of the accused, and after she left the pistol could not be found in the room. Robert Meacham denied positively being in the bed or having any pistol when the accused was in the room, but the testimony of the latter is direct that Meacham was in the bed and drew a pistol from under a pillow, and attempted to use it. It can not be said, we think, that the proposed testimony was wholly irrelevant and immaterial, the grounds upon which it was excluded by the court. The room had been rented by the deceased, and the bed at the time was under her control. If the statement of the accused could be accepted, Meacham drew from under the pillow on the bed in that room a black looking pistol, like the one that had previously been given the deceased. It was a fact that was proper to be shown and though of little importance, not immaterial or irrelevant.

We do not find any refusal to permit a proper test of the knowledge of Dr. Bird, as an expert, and there. is no error in respect of his testimony.

The defendant was sworn and proposed to make a statement to the jury without being examined as a witness. This right was claimed under section 2008 Revised Statutes, and it is contended that it has not been taken away by the act of 1895, Chapter 4400. The court ruled that the defendant could voluntarily take the stand and testify only as other witnesses and under the rules governing witnesses generally. That this ruling was correct is clearly shown by our previous decisions. Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Hart v. State, 38 Fla. 39, 20 South. Rep. 805.

Errors are assigned on the refusal of the court to give certain charges requested by the accused, but we find no sufficient exceptions to these charges to authorize their constitution. Under Section 1092 Revised Statutes, charges given by the court to the jury can be excepted to in a motion for a new trial, but exceptions to rulings refusing to give instructions must be made at the time the rulings are made, and it is too late to except for the first time in the motion for a new trial. Lester v. State, *supra.* There were no exceptions taken to the charges refused in this case until the motion for new trial was made, and hence there is nothing for us to review on such rulings.

It is further assigned for error, and insisted on here. that the court erred in not instructing the jury as to the right of a majority of their number to recommend the accused to the mercy of the court, and also in not charging the jury upon the law of murder in the second degree. It is not error for the court to omit to inform the jury that a majority of their number can recommend the accused to the mercy of the court. Newton v. State, 21 Fla. 53; Garner v. State, 28 Fla. 113, 9 South. Rep. 835. The court may so instruct the jury if it is deemed necessary, or the defendant's counsel may read the statute to the jury if it is desired that they be informed of the same. No request was made to instruct the jury on the subject of their right to recommend the accused to mercy, or upon the law of murder in the second degree. If the accused desired the law of murder in the second degree to be given to the jury it was his duty to request it, and a failure to do so deprived him, under the settled rule in this State, of any ground of exception on account of the omission to so charge. Blount v. State, 30 Fla. 287, 11 South. Rep. 547.

The following instruction given by the court to the

jury was excepted to by defendant, *viz*: "If you believe from all the testimony in this case that the defendant was informed that, in a certain house, an offense was being committed against the ordinances of the city of Tampa, and that the defendant was a policeman of the city of Tampa at the time, then it was his duty, and it was lawful, if not resisted, for him to go into said house for the purpose of preventing, or arresting those who might in his presence be guilty of a violation of the ordinances of said city; but if you believe from all the evidence in this case that he went to that house in good faith as an officer of the law to enforce the law, and after he got in there, violated the law himself, then the law removes its sanction to such entry, and he becomes a trespasser from the beginning." This charge is not correct, and we find no authority to sustain it. The Circuit Judge must have failed to observe the distinction obtaining in the civil and criminal departments of the law in the application of the rule sought to be invoked in the charge. Mr. Bishop says (vol. 1 Crim. Law, §208, 8th edition) "in civil jurisprudence we have the rule that when a man does a thing by permission of law—not by license, but by permission of law—and, after proceeding lawfully part way, abuses the liberty the law had given him, he shall be deemed a trespasser from the beginning by reason of this subsequent abuse. But this doctrine does not prevail in our criminal jurisprudence; for no man is punishable criminally for what was not criminal when done, even though he afterwards adds either the act or the intent, yet not the two together." The cases cited, State v. Moore, 12 N. H. 42, and Commonwealth v. Tobin, 108 Mass. 426, S. C. 11 Am. Rep. 375, sustain the text. The rule is clear that an erroneous instruction to the jury will cause a reversal unless it affirmatively appear that no harm was thereby done the

accused. The accused was shown to be a police officer and he offered some claim that he went to the house where the shooting took place for the purpose of preventing a violation of the ordinances of the city. We express no opinion as to the force of such claim, or how the jury should have viewed it, but the accused clearly had the right to have the matter correctly presented to the jury in the charge of the court. The court informed the jury, in effect, that although the accused had a right, and in fact it was his duty to go into the house, if necessary to make an arrest for a violation of the ordinances of the city of Tampa in his presence; yet if, after getting in there, he violated the law himself he was a trepasser *ab initio,* and the law withdrew its sanction of his presence in the house. The charge was clearly erroneous, and we can not say it was without harm to the defendant, and in view of the rule announced it works a reversal.

For the errors in ruling out the testimony in referenct to giving the pistol to the deceased, Georgie McGraw, and in giving the clearly erroneous charge, the judgment is reversed and a new trial awarded.