SHERMAN COPELAND, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. It is futile to object in the appellate court that the trial court did not instruct the jury upon all the grades of homicide to which the evidence may be applicable when no request was made to instruct on the lesser grades than that of which the accused was convicted.

2. Since the act of 1895, Chapter 4400, a defendant in a criminal prosecution has no right to make a sworn statement to the jury without the right of cross-examination as other witnesses, by the State.

Copeland v. State.—Opinion of Court.

3. A medical witness was examined by the State as to the charac-
   ter of wounds inflicted upon the deceased.  After stating on
   cross-examination that he had known the deceased for five
   years; he was asked by the defendant what was the deceased's
   character in the community in which she lived:  *Held,* That
   the question was properly excluded because the testimony
   sought to be elicited thereby was not in cross of anything
   brought out in the direct evidence; that no foundation had been
   laid at the time for the introduction of evidence as to the
   character of the deceased, nor was the particular phase of
   character indicated.

4. Testimony tending to impeach the moral character of the de-
   ceased, or tending to show general bad character, when such
   evidence does not come within the rule announced in this State
   to explain or tend to explain the conduct of the deceased at
   the time of killing when the plea is self-defence, should be ex-
   cluded.

5. When a person of sound mind criminally acts upon the impulse
   of heat or passion or feelings produced by motives of anger,
   hatred or revenge, he is responsible for his acts.

6. Charges of the court to the jury should be based upon the tes-
   timony in the case, and when a charge requested is not author-
   ized by the testimony it is not error to refuse it.

Writ of error to the Circuit Court for Orange coun-
ty.

The facts in the case are stated in the opinion of the
court.

*Fred. T. Myers* (on brief of J. Edward Allen), for
Plaintiff in Error.

*The Attorney General,* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted, tried and convict-

ed of murder in the first degree, and the death pen ilty imposed upon him by the judgment of the court.

One of the errors assigned is that the court failed to instruct the jury as to the various degrees of homicide. The court instructed the jury as to murder in the first degree and the right of self-defence. No request was made for further instructions as to the different degrees of homicide. This court has held that the futility of objecting that the trial judge did not instruct the jury upon all the grades of homicide to which the evidence may be reasonably applicable must, in the absence of a request for instructions on the lesser grades than that of which the accused was convicted, be considered as settled in this court, and as meriting no discussion in future opinions. Lovett v. State, 30 Fla. 142. 11 South. Rep. 550.

Another assignment of error is that the court erred in refusing to allow the defendant to make a statement of his case in his own way. The record shows that the defendant was sworn in his own behalf and testified as a witness on direct and cross-examination. It is not shown that he claimed the right to make a sworn statement in his own way independent of an examination as a witness, and there was no request for the court to make any ruling as to the right to make such statement. There is nothing in fact in the record upon which to base the assignment of error stated. We deem it not out of place to say that since the act of 1895, Chapter 4400, a defendant has no right to make a sworn statement without the right of cross-examination by the State, and that if he voluntarily testifies in his own behalf he must do so as other witnesses under the rules governing witnesses generally. Milton v. State, 40 Fla. 251, 24 South. Rep. 60.

The accused was charged with the murder of Mary

Clark. The first witness examined by the State was Dr. Henkel, who testified as to the character of the wounds inflicted upon the deceased. On cross-examination he stated that he had known the deceased five years, and was then asked what was her character in the community in which she lived. The question was excluded on the State's objection, and this ruling is assigned as error. The ruling was correct for several reasons. The testimony sought to be elicited was not in cross of anything brought out in the direct evidence. There was no foundation whatever laid at the time for the introduction of evidence as to the character of the deceased, nor was the particular phase of character indicated. Bond v. State, 21 Fla. 738; Garner v. State, 28 Fla. 113, 9 South. Rep. 835; Ibid. 31 Fla. 170, 12 South. Rep. 638. In his own behalf the accused gave evidence tending to impeach the moral character of the deceased. He testified that she was a woman that always tried to overcome a good man as she thought. The State objected to any evidence as to the character of deceased, and the objection was sustained. Defendant's counsel then proposed to examine him as to her character, and propounded the following question: "will you state what sort of character she (Mary Clark) bore in the community where she lived, whether it was good or bad for ferocity and vindictiveness and general cussedness?" The court excluded the testimony and defendant excepted.

This court has carefully considered the conditions under which, in cases of homicide, evidence of the reputation of the deceased as a violent, quarrelsome and dangerous person can be given. In Garner's case, reported in 28 Fla. 113, 9 South. Rep. 835, it was held that evidence of the violent and dangerous character of the deceased is admissible to show, or as tending to

show, that a defendant has acted in self-defence, or under such circumstances as would naturally cause a man of ordinary reason to believe himself to be at the time of the killing in imminent danger of losing his life, or of suffering great bodily harm, at the hands of the deceased; but such evidence is not admissible for this purpose except when it explains, or will give meaning, significance or point, to the conduct of the deceased at the time of the killing, or will tend to do so; and such conduct of the deceased at the time of the killing, which it is proposed to thus explain, must be shown before the auxiliary evidence of such character can be introduced. And when a defendant proposes to show the character of the deceased in aid of his plea of self-defence, under the circumstances stated, the evidence must be confined to general reputation of the deceased as a violent or dangerous person. Garner v. State, 31 Fla. 170, 12 South. Rep. 638; Nelson v. State, 32 Fla. 244, 13 South. Rep. 361. Evidence of immoral character of the deceased is not proper, as it is no less a crime to murder a bad person than a good one. Counsel included in the question ruled out an enquiry as to the character of the deceased in the community in which she lived for "general cussedness," and just what he proposed to show under this head we are unable to conjecture. There is nothing before us that sheds any light on this offer. The court very properly excluded such a question, without reference to any other ground, because it indicated an enquiry as to character beyond all legitimate bounds.

The defendant excepted to the refusal of the court to give the following instruction, viz: "If the jury believe from the evidence that the defendant at the time of the killing was temporarily insane, and not responsible for his conduct, he should be acquitted." Insanity as affecting accountability for criminal action has given

rise to much judicial discussion, and in America there is considerable conflict of opinion or confusion on the subject. It is conceded to be an intricate and difficult question. It was held by the judges of England in 1843 that if the accused was conscious that the act was one which he ought not to do, and the act at the time was contrary to law, he was punishable. It was ruled that in all such cases the jury ought to be told that every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defence on the ground of insanity, it must be clearly proved that at the time of committing the act the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or as not to know that what he was doing was wrong. It was also held that notwithstanding a party accused did an act, which was in itself criminal, under the influence of insane delusion, with a view of redressing or revenging some supposed grievance or injury, or of producing some public benefit, he was nevertheless punishable if he knew at the time that he was acting contrary to law. M'Naghten's Case, 10 Clark & Finnelly, 200. The rule stated is what is known as the right-and-wrong test, and has not been regarded as entirely correct by some American judges and text-writers. It seems to be the settled English rule and has not been much departed from that we have been able to find. Many authorities might be cited, but we refer to only two which, among many, undertake to review the subject. State v. Harrison, 36 W. Va. 729, 15 S. E. Rep. 982; Parsons v. State, 81 Ala. 577, 2 South. Rep. 854. Some decisions maintain the view that although an accused may know the nature and quality of the act he does, and that it is wrong, or contrary to

law, yet if he committed the act under an irresistible impulse he should be held unaccountable. This is the so-called moral insanity rule, and it seems to recognize the fact that a man may have sufficient mental capacity to know what he is doing, and that it is wrong, yet not sufficient to be responsible to the law for his acts. The English rule proceeds upon the theory that if a man knows the nature and quality of his act, and that it is wrong, he has sufficient mental capacity to be responsible for not properly controlling his actions. By statute in this State the common law of England in relation to crimes, except as to the modes and degrees of punishment, is of full force in this State where there is no existing provision by statute on the subject. It is not our purpose now to make any definite announcement as to what is the correct rule in instructing juries on the subject of insanity when the facts properly call for such instructions, as the present case does not, in our judgment, demand it. No appellate court, so far as we have found, whether proceeding upon the right-and-wrong test, or the moral insanity theory, has gone so far as to hold that a person of sound mind who commits a criminal act should be held irresponsible on the ground that it was done under such an impulse of resentment, jealousy and revenge as temporarily to dethrone the reason. Heat of passion, or feeling produced by motives of anger, hatred or revenge, is not insanity, and the law holds the person who acts criminally under such impulses responsible for his crimes. People v. Foy, 138 N. Y. 664, 34 N. E. Rep. 396; Williams v. State, 50 Ark. 511, 9 S. W. Rep. 5; Guetig v. State, 66 Ind. 94, S. C. 32 Am. Rep. 99; Sanders v. State, 94 Ind. 147; Goodwin v. State, 96 Ind. 550; State v. Graviotte, 22 La. Ann. 587.

A careful consideration of the evidence in the pres-

Copeland v. State.—Opinion of Court.

ent case has conducted us to the conclusion that the court was right in refusing the charge requested. The most that can be claimed from the testimony as to insanity is that the defendant slew the deceased with whom he was greatly enamored, and with whom he had lived illicitly for a year or more, because he discovered that she was associating with another man. There is no testimony tending to show insanity before the killing, and none connected with the act of killing, except that the accused became worked up to a high state of passion and frenzy on seeing the deceased come to her own home at a late hour of the night with a man, and hearing her invite him to share her bed during the night. Without detailing the evidence in the case, we announce the conclusion that there was no sufficient basis of fact to demand a submission of the question of insanity to the jury, and there was no error in refusing the charge stated. The evidence is sufficient to sustain the verdict.

The judgment of the court must, therefore, be affirmed, and it is so ordered.