341 So.2d 815 (1977)
David N. MARCUM, Appellant,
v.
STATE of Florida, Appellee.
No. 76-869.
District Court of Appeal of Florida, Second District.
January 19, 1977.
Rehearing Denied February 11, 1977.
*816 Jack O. Johnson, Public Defender, and David S. Bergdoll, Asst. Public Defender, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
Appellant was charged with resisting arrest with violence and battery. Self-defense was an issue at the trial. The jury found appellant guilty of both charges. This is an appeal from the judgments of guilt and the sentences entered thereon.
Appellant was driving his car north on U.S. 19 in Pasco County. He was accompanied by his wife and children as they were on their way home from Christmas shopping. Appellant was in the righthand lane of a multiple lane highway. He started to pull out to pass a car in front of him at a time when Wayne Thomas was overtaking in the lefthand lane. As a result, Thomas had to suddenly brake his car to avoid an accident, and appellant pulled back into the righthand lane. From here on, the testimony was in substantial conflict.
Appellant says that Thomas started tailgating him, swerving and honking his horn. When he was unable to get out of his way, he pulled off the side of the highway. Thomas pulled off in front of him. Both drivers got out of their cars. Appellant testified that Thomas said, "Boy you did this to the wrong fella this time." Thomas walked up to appellant and displayed his wallet and a badge indicating that he was a deputy sheriff and said that appellant was under arrest. Thomas was in civilian clothes and his wife was in the car. Referring to the badge, appellant said, "That is probably phony." Thomas put his chest up against appellant and started yelling at him with his saliva striking appellant in the face. Appellant pushed Thomas back. At this point, Thomas began to curse him and swung his fist at appellant but missed. Appellant then hit the deputy and they began to wrestle. They finally became disengaged at the importunities of their wives. Another deputy subsequently came to the scene and transported appellant to the sheriff's office. Appellant's wife corroborated his version of the incident.
Deputy Thomas who was not on duty at the time said that when appellant swerved in front of him he did not seek to follow him or catch up with him. He said the two cars simply came abreast of each other about two miles up the road. At this point appellant said something and pointed to the side of the road, so both of them pulled off. After both drivers got out of their cars, Thomas identified himself with his badge. Appellant said, "That is a damn phony." Appellant then pushed Thomas and then hit him. Thomas advised appellant that he was under arrest for assault and battery. The parties then scuffled, but Thomas denied throwing a punch at any time. Thomas then requested his wife to call the sheriff's department. Thomas' wife gave a similar version of the events.
Mrs. Blalock who was sitting in a car in her yard testified that Deputy Thomas' vehicle cut off appellant's vehicle causing him to pull off the road in front of her house. She heard Thomas state that he was a police officer and saw him take something out of his pocket. She said appellant then shoved the officer. At this point Thomas struck appellant with his fist, appellant hit back, and they began to wrestle on the ground. The deputy who was called to the scene testified that after he gave appellant his Miranda warnings appellant offered to fight him if he took the handcuffs off. He said appellant was very belligerent and cursed all the way to the station.
As part of his defense, appellant sought to have Kathy Gruber testify concerning Thomas' general reputation for aggressiveness and violence on the issue of who was the initial aggressor. The court declined to permit the testimony on the ground that the appellant had failed to establish a proper predicate. We believe this was error.
*817 In Cole v. State, 193 So.2d 47 (Fla. 1st DCA 1967), the court reversed a manslaughter conviction for the refusal to permit a witness to testify that "the decedent had a record for cuttings and was a violent man." The trial judge had rejected the testimony because there was no proof that the defendant was aware of the decedent's propensity. The district court of appeal observed that the ruling would have been correct if the purpose of the interrogation had been to explain the acts of the defendant as in the case of self-defense. However, the court held that the testimony should have been admitted in this case in order to "give meaning, significance, or point to the conduct of the deceased at the time of killing." In a case involving the issue of who was the aggressor, the court held that it was irrelevant that the defendant was not aware of his adversary's reputation. See also Fine v. State, 70 Fla. 412, 70 So. 379 (1915); Copeland v. State, 41 Fla. 320, 26 So. 319 (1899); Garner v. State, 28 Fla. 113, 9 So. 835 (1891); 1 Jones on Evidence, § 4.40 (6th ed. 1972); Annot., 1 A.L.R.3d 571, 601 (1965).
S. Gard, Florida Evidence (1967), states the principle as follows:
"RULE 96. Character Evidence in Assault and Homicide cases

The reputation or character of the victim in a criminal or civil case involving assault or homicide is not directly in issue, but evidence of his reputation or character may be circumstantially relevant on the issues of self-defense or who was the aggressor."
A portion of the author's comment which follows the statement of the rule says:
"On the issue of who was the aggressor, it is not the state of mind of the victim which counts. Therefore, it is not necessary in such cases to show that the defendant had knowledge of the propensities of the victim, because the evidence is relevant only on the question of who started the fight... ."
The state argues that since appellant admits pushing the officer back before any blows were struck that there was no dispute concerning who was the aggressor. This begs the question, because according to appellant's version (which is somewhat substantiated by Mrs. Blalock), Thomas' conduct on the highway would have made him the initial aggressor. On this point, the state suggests that Deputy Thomas simply "pulled" appellant to the side of the road for his erratic driving behavior, but Thomas, himself, doesn't even support this view. Thomas testified that he pulled off the road at appellant's invitation and only sought to put appellant under arrest after the appellant struck him. While the question of who was the aggressor would not normally be an issue in the resisting arrest case,[1] both the resisting arrest and the battery charges were tried together, and the facts of both were interwoven. Therefore, if the jury had believed that Thomas rather than the appellant was the aggressor, it may well have been that appellant would have been acquitted of both charges.
The evidence in this case was in sharp conflict. The testimony of appellant and his wife cannot be reconciled with that of Thomas and his wife. The testimony of the second deputy supports Thomas' description of appellant's hostile attitude. On the other hand, to the extent that she was able to observe what transpired, Mrs. Blalock's testimony supports appellant. Therefore, Ms. Gruber's testimony could have tipped the scale for appellant.
The judgments and sentences are reversed, and the cases are remanded for a new trial.
HOBSON, A.C.J., and McNULTY, J., concur.
NOTES
[1] This incident occurred subsequent to the effective date of Sec. 776.051, Florida Statutes (1975). Therefore, appellant could be convicted of resisting arrest even if the arrest was illegal.