ERVIN, Judge,
dissenting.
I cannot join the majority’s opinion in affirming appellant’s conviction of resisting arrest with violence on the ground of harmless error. The majority states that some of the evidence contained in Officer Butcher’s personnel file was relevant for discovery purposes, and I thoroughly agree. The trial court entered the following findings after reviewing the officer’s file:
(a) there are no civil suits pending against Officer Butcher for acts relating to his position as a police officer.
(b) on September 13, 1976, Officer Butcher failed to report for duty involving traffic control at a football game. As a result, he was required to work on his next regularly scheduled off duty day.
(c) on April 14, 1976, Officer Butcher and another officer investigated an auto accident involving one Paul Thompson. Thompson, found to be at fault, complained that Officer Butcher was rude, prejudiced and did not conduct a proper investigation. An internal affairs unit investigation found no substance to Thompson’s complaint.
(d) on May 15, 1976, while working in an off duty capacity providing security at a local restaurant, Officer Butcher arrested one John Dixie for trespass after *1273 warning and resisting arrest with violence. Butcher’s arrest report related that Dixie, while in his automobile in the parking lot, directed profane, threatening language toward four youths walking in the area. Butcher identified himself and asked Dixie on several occasions to leave before a breach of the peace occurred. Dixie refused, was arrested for trespassing and was asked to get out of his car. He declined to do so and Butcher proceeded to forcibly remove him. . A scuffle ensued in which Dixie was struck on the left arm with Butcher’s flashlight. Finally, another officer arrived and assisted Butcher in subduing Dixie. Dixie claimed that Butcher directed racial slurs at him and used excessive force in the arrest. An internal investigation exonerated Butcher. Dixie subsequently entered pleas of nolo contendere to trespass and battery on Officer Butcher which pleas resulted in adjudication of guilt and a county jail sentence for Dixie.
(e)on the night of August 29, 1976, Officers Butcher, Payne and Wright were working in an off duty capacity at a local fast food restaurant. One of the officers arrested a young man for careless driving and disorderly conduct in the vicinity of the restaurant. A friend of the arrested youth approached Officer Butcher objecting to the arrest. The friend was told to move away from the police cruiser and mind his own business. He refused and was placed under arrest. He began fighting with Butcher and attempted to flee. He was subdued by Butcher, assisted by the other two officers. During this melee the original arrestee attempted to flee. Officer Payne ran the young man down as a hostile group of youths formed. Fearing a potential violent confrontation, an officer on the scene summoned assistance from other officers and Butcher, Wright and Payne departed the scene with the two youths.
A complaint of excessive force was lodged against Butcher, not by the young men involved in the incident but rather by two local ministers who were without firsthand knowledge of the events of the evening. The complaint was subsequently determined to be unfounded.
(f) in the early morning hours of January 1, 1978, Officer Butcher, some other law enforcement officers and their wives were leaving a local lounge where they had celebrated the advent of the New Year. In the parking lot one Frank Thompson, inebriated, directed some vulgar comments to one of the wives in the group. A fight ensued between one of Butcher’s companions and Thompson. Thompson retreated and retrieved a pistol from his automobile. Butcher and two of his companions struggled to disarm Thompson and, in the struggle, Thompson received a puncture wound to the left shoulder when Deputy Sheriff Keith Daws’ service revolver discharged. Officer Butcher was exonerated of any wrong doing. Thompson pleaded guilty to reckless display of the firearm and received a jail sentence.
(g) on April 20, 1978, Officer Butcher was dispatched to the scene of an auto accident at a busy intersection near downtown Tallahassee.. During the course of his investigation a passing motorist turned his vehicle in a direction other than that motioned by Butcher. The motorist subsequently complained that Butcher had cursed him, which allegation Butcher denied. An internal investigation resulted in the finding of insufficient evidence to support the charge.
(h) on May 26, 1978, Officer Butcher was accused of harassment by an 18 year old motor cyclist after the young man was given a traffic citation for racing down Tennessee Street on his motorcycle. The youth alleged that Butcher bore him a grudge for personal reasons. An internal investigation determined the complaint to be unfounded.
(i) on July 26, 1978, as Officer was directing traffic at an auto accident site, an impatient motorist proceeded to weave his way through a blocked intersection. Butcher shouted at the motorist, who stopped briefly before attempting again to cross the intersection. This time, Offi *1274 cer Butcher hit the windshield of the auto with his open hand. The motorist complained that the officer was rude and sarcastic and neglectful of his duty. An internal hearing cleared Butcher of these charges.
(j) on April 7, 1979, Officer Butcher was assigned to traffic conrol [sic] duty during the Springtime Tallahassee parade. The intersection at which he was posted was barricaded while the parade was in progress. A motorist requested that Officer Butcher remove the barricade so that he could proceed along his way. Butcher declined to do so and the motorist complained that the officer was rude, discourteous and made no effort to assist him. A hearing was held and the complaint was not sustained.
(k) in September of 1980, an applicant for a taxi cab permit claimed that Officer Butcher was biased in refusing to issue him a permit. At a hearing it was determined that Butcher was following existing procedures and that his denial of the requested permit was justified because the applicant could not validate required identification documents.
The defense’s purpose for seeking discovery of the above information was to ascertain Officer Butcher’s reputation for violence or use of force in making arrests. As noted from the prior opinion, Ivester’s defense relied almost entirely upon that of self-defense. Although specific instances of violence by the person involved are not ordinarily admissible, see Section 90.405(2), Florida Statutes (1979); Ehrhardt, Florida Evidence § 405.3 pp. 85-87 (West 1977); Fulton v. State, 335 So.2d 280 (Fla.1976), the question before us is not whether alleged specific acts of violence are admissible, but whether, had they been produced on discovery, they would have included “any relevant matter or information that appears reasonably calculated to lead to discovery of admissible evidence.’’ Ivester v. State, 398 So.2d 926, 930 (Fla. 1st DCA 1981). It seems to me that we must first determine whether the material subsequently reviewed on remand could have led to the discovery of admissible evidence, and, if so, next whether but for its erroneous omission, “it is likely that the result below would have been different.” Palmes v. State, 397 So.2d 648, 654 (Fla.1981), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).
From my examination of the ten complaints filed against Officer Butcher, I find that four reveal charges of either excessive force, profanity, or other acts indicating the officer’s disposition for violence. The fact that none of the complaints filed against Officer Butcher led to disciplinary action is immaterial to the question of whether such information is reasonably calculated to lead to the discovery of admissible evidence at trial. The nature of such evidence is character evidence and it is established by the witness’s knowledge of the person’s reputation for the specific trait in issue. Alford v. State, 47 Fla. 1, 36 So. 436 (1904). Reputation is of course not dependent upon established facts, but rather upon hearsay, and section 90.803(21) of the Evidence Code recognizes reputation testimony as an exception to the hearsay rule.
Section 90.404(l)(b), Florida Statutes, permits the admissibility of evidence relating to the victim’s violent character when self-defense becomes an issue for two purposes: One, when offered by the defendant to prove the victim was in fact the aggressor, and two when an accused relies on self-defense in order to prove the accused was apprehensive of the victim and that his defensive measures were reasonable. Ehr-hardt, supra, § 404.4, at 70. The second situation is not applicable. The defendant did not testify, and no evidence was offered showing that he knew of the victim’s reputation for violence or aggression before defending himself. The fact, however, that the defendant had no prior knowledge of the victim’s violence is immaterial to the admissibility of character evidence on the issue of who was the initial aggressor. Id. See also Cole v. State, 193 So.2d 47 (Fla. 1st DCA 1966); Marcum v. State, 341 So.2d 815 (Fla. 2d DCA 1977); Banks v. State, 351 So.2d 1071 (Fla. 4th DCA 1977). This evidence is properly established by testimony *1275 of the witness’s knowledge pertaining to the victim’s reputation for violence, not only in the community, but also in the neighborhood and place of employment. See section 90.803(21), and Ehrhardt, supra, § 405.1 at 33 (1982 pocket part).
Specific instances of the victim’s conduct may yet be admissible during the cross-examination of a reputation witness. Before the enactment of the 1978 amendment, section 90.405(1) provided in part: “On cross examination, inquiry is allowable into relevant specific instances of conduct.” The 1978 legislature deleted this sentence. See Chapter 78-361, § 7, Laws of Fla. Yet the commentary to the 1978 amendment observes that “striking this language should not change the existing law which allows inquiry into whether the witness has heard that the defendant [victim] committed certain acts. Fine v. State [70 Fla. 412], 70 So. 379 (Fla.1915); Cornelius v. State, 49 So.2d 332 (Fla.1950).” 6B Florida Statutes Annotated § 90.405 at 425. Accordingly, if the state were to elect to offer rebuttal reputation testimony to that presented by the defense, the defense, to the limited extent stated, would be permitted to cross-examine the witness with questions directed to whether the witness had heard of specific acts committed by the victim which would be relevant to the issue of the victim’s character.
I think it obvious that the material sought to be discovered, as it related to the violent character of the victim, could well have led to the discovery of admissible evidence. The majority also goes this far, but concludes that the error caused by the material’s exclusion was harmless only. I am unable to make this leap in judgment. I consider that such a determination cannot be logically reached once a comparison is made of the evidence presented at trial without the potential reputation testimony, and then of the effect the requested material might ultimately have had upon the evidence which was actually admitted at trial.
The record of the trial proceedings, as it relates to the issue of whether Ivester resisted arrest with violence, can hardly be considered overwhelming. Three witnesses, including Officer Butcher, testified that Iv-ester offered resistance by striking and kicking the officer while the defendant and the officer were struggling on the ground. Three other witnesses at the scene, including a police officer, testified to the contrary, stating that they did not see Ivester strike Officer Butcher at any time. And two of the defense witnesses testified that Officer Butcher precipitated the conflict by knocking a sandwich from the hands of the defendant. Another stated that after Ives-ter was handcuffed, he saw Officer Butcher strike Ivester three or four times as he was being pushed toward a police car.
The discovery of the additional information also would have served to counter the prosecution’s comments during closing arguments portraying “Officer Butcher as part of the ‘new breed of police officers’ and a ‘fine officer’ with a degree in criminology.” Ivester, 398 So.2d at 929. These statements clearly had the effect of bolstering the officer’s character, which the defense had no means of refuting.
If the test for harmless error is for the court to inquire “whether, but for the erro-, neous ruling, it is likely that the result below would have been different ... ”, Palmes, 397 So.2d at 654,1 am unprepared to say, given the substantial conflict in the witnesses’ testimony below, that it is unlikely the result reached would have been different if the discovery of the requested material had been granted. I would accordingly remand this case to the trial court for further proceedings consistent with this opinion by directing that the material reflecting the officer’s propensity toward violence be disclosed to appellant’s counsel for the purpose of developing that material, if possible, into admissible evidence. If appellant is able to produce evidence, in the form of appropriate reputation testimony, I would then direct the trial court to reverse appellant’s conviction and grant him a new trial.