EMIL BRUSWITZ, RESPONDENT, *v.* THE NETHERLANDS AMERICAN STEAM NAVIGATION COMPANY, APPELLANT.

*Ocean steamships — a cause, not proximate, of an accident — measure of care required — misconduct of jurors — must be objected to on the trial.*

In an action brought by a passenger upon a steamship, for injuries alleged to have been sustained on a voyage from Amsterdam to New York, by reason of the negligence of the steamship corporation, the complaint alleged that, the dining saloon being dimly lighted, the plaintiff tripped and fell on sockets fixed in the floor and used to secure tables.

The evidence showed that the accident happened from the rolling of the sea, and would have happened whether the saloon was lighted or not.

*Held,* that it was error for the court to refuse to withdraw from the jury the question of the insufficient lighting of the saloon.

The court charged the jury that the steamship company, as carriers of passengers, were bound to use the utmost care and diligence.

*Held,* that this was improper; that such a carrier was bound only to ordinary care in a case where no question arose as to defects in the machinery or in the mechanical appliances for the transportation of passengers.

That if the socket was the proximate cause of the accident, it was a visible defect.

Although a jury misconducts, by practically taking the trial of the case into their own hands, yet where counsel do not move to discharge the jury, but substantially acquiesce in the manner in which the trial is being conducted, they cannot subsequently take advantage of such misconduct.

APPEAL by the defendant, the Netherlands American Steam Navigation Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 13th day of May, 1891, upon a verdict for the plaintiff for $3,500, rendered on a trial at the New York Circuit before the court and a jury; also from an order, entered in the same clerk's office upon the same day, denying a motion for a new trial made by the defendant on the minutes of the court.

*J. A. Shoudy,* for the appellant.

*William P. Burr,* for the respondent.

O'BRIEN, J.:

The action was brought to recover damages for an injury alleged to have been sustained by the plaintiff while a passenger on the

defendant's steamer " Leerdam " on a voyage from Amsterdam to New York.

The first ground relied upon by appellant for a reversal relates to the conduct of two jurors during the trial, such conduct having been made the basis of a motion for a new trial, which was denied. We agree with the appellant, that the course pursued by these jurymen in endeavoring practically to take the conduct of the case away from the court and counsel, and into their own hands, was both extraordinary and reprehensible ; and had it been availed of, during the course of the trial and before the verdict, as the basis of a motion to discharge the jury, we would have regarded an exception taken to a refusal to so discharge the jury as good, and one entitling the aggrieved party to a new trial. It will not do, however, for counsel, notwithstanding such improper conduct of jurymen, to go on with the trial without objection and speculate upon the result of the verdict, and when it is against them seek to set it aside. Where no objection is made, and no exception taken, the counsel practically acquiesce in the manner in which the trial is being conducted, and they cannot take advantage of the misconduct of jurors which occurs in their presence, and of which they have full knowledge. This conclusion renders it unnecessary for us to determine whether or not, after verdict, a motion such as this should have been made at Special Term or at Trial Term.

The other grounds relied upon for a reversal relate to the sufficiency of the proof, or the failure of the judge to withdraw the consideration of certain questions from the jury, and exceptions taken to certain requests made by the plaintiff and charged by the court. In determining these questions a brief summary of the complaint, and of so much of the testimony as is requisite to present the questions, is necessary.

The complaint alleges that plaintiff, while going from his cabin to the dining saloon of the steamer, on his way to the upper deck thereof, the said dining saloon being then dimly, imperfectly, insufficiently and negligently lit or illuminated, tripped and fell with great force and violence on the sockets fixed in or attached to the floor of said dining saloon, and used to support or secure the tables therein, dislocating his shoulder and receiving other serious bodily injuries. In thus assigning the charges upon which the negligence of the

defendant is predicated, it will be seen that the failure to properly light the dining saloon is given such prominence, that in one construction to be given to the complaint it might be regarded as the sole ground upon which the negligence of the defendant is placed.

Taking, however, a construction of the complaint for the purpose of sustaining the judgment most favorable to the plaintiff, and assuming that, in addition to the failure to properly light the saloon, the claim is made that the proximate cause of the accident was due also to the negligent manner in which the sockets, fixed in or attached to the floors of the saloon, were left after the tables were removed, we have, nevertheless, to consider the question raised by the defendant's exception to the court's refusal to withdraw from the consideration of the jury the question as to the insufficient lighting of the saloon.

In so construing the complaint, the fact should not be overlooked that in terms it is not claimed that the injury resulted from falling *over the sockets*, which it is said were allowed to remain in the saloon and rising some inches above the floor; the statement being, " That plaintiff while going, as he had a right to go, from his cabin through the dining saloon of said steamer on his way to the upper deck thereof, the said dining saloon being then dimly, imperfectly, insufficiently and negligently lit or illuminated, tripped and fell with great force and violence on the sockets fixed in or attached to the floor of said dining saloon, and used to support and secure the tables therein."

The only evidence presented by the plaintiff to sustain the allegation that the saloon was dimly, imperfectly, insufficiently lighted and illuminated, was that of the plaintiff himself, who said " there was, I think, one little light in the saloon at this time." Such testimony cannot be regarded as establishing the fact that the saloon was not sufficiently lighted, nor is it evidence to establish that it was at all dark in the saloon. So far as it is made to appear, one light may have been entirely sufficient. Apart, however, from this, we think the proof makes it entirely clear that the absence of light did not, in any manner, contribute to the plaintiff's injuries.

The plaintiff's testimony was : " I opened the door to go out (my state-room), and when I got out to close the door I had the cigars in one hand. The moment I let go I slipped — the vessel lurched and I

slipped.   I said before, 'while coming out of the cabin I had the cigars in one hand and the door-knob in the other, and while putting my cigars in my pocket the ship lurched and I slipped, and my toe stubbed up against this socket.' "

Again he says : " I opened the door with one hand to get out of the cabin of the state-room, and when I got out I tried to close it with the other and I slipped and fell — I slipped and fell in the act of closing the door the moment I let go of the door.' "

It will thus be seen that, according to plaintiff's account, the accident was caused by the action of the sea, the tossing of the vessel by plaintiff's letting go his hold on the knob of the cabin door, and, according to one account given by him, of stubbing his toe and falling over the socket; and according to another version, " on the socket," in the saloon.   The primary cause, therefore, was the action of the sea, which produced a rolling of the vessel and precipitated the plaintiff with such force that he was thrown in the direction of the sockets, which would have been the result whether the saloon was brilliantly lighted or enshrouded in darkness.   Regarding, solely, the evidence offered by plaintiff, and without considering the defendant's testimony on the subject at all, it would not justify a finding that there was any want of sufficient light in the saloon, and even if there had been a lack of light, that could neither have caused nor prevented the accident.   The defendant, therefore, had a right to have this question withdrawn from the jury as an issue, and it was error for the court to refuse to charge, as defendant requested, that there is no evidence in the case that will justify the jury in finding that the plaintiff was injured by reason of the cabin being insufficiently lighted.   We think the trial judge also erred in the instructions given to the jury at the plaintiff's request.   These were as follows :

(1.) " That if the accident happened from a defect in the ship or in the accommodation of its second-cabin dining saloon, which might have been discovered or remedied upon the most careful and thorough examination of said ship and floor, such accident must be ascribed to negligence, for which the owner is liable in case of injuries to a passenger happening by reason of said accident."

(2.) " That passenger-carriers bind themselves to carry those

whom they take into their conveyances safely as far as human care and foresight will go ; that is, to the utmost care and diligence of every cautious person."

(3.) "A carrier of passengers is bound to use the utmost care in the providing of safe and sufficient and suitable vehicles or vessels and other necessary or appropriate instruments and means of transportation, as well as in the management of the same, and in making such reasonable arrangements as a prudent man would make to guard against all dangers from whatever source arising, which may naturally and according to the usual course of things be expected to occur."

(4.) " The rule as to care and diligence binds common carriers of passengers to the exercise of the utmost human care and foresight, and makes them responsible for injuries and losses arising from even the slightest negligence."

As said in *Palmer* v. *The Pennsylvania Company* (111 N. Y., 492) : "We think the trial court was not justified in applying to this case the rule pertaining to the construction and maintenance of tracks and running machiney by a railroad corporation, which holds them to the use of the utmost possible care in discovering and remedying defects therein. That rule is applicable to such appli-ances of a railroad as would be likely to occasion great danger and loss of life to the traveling public if defects existed therein on account of the velocity with which cars were moved, and the destruc tive and irresistible force which accompanies such motion."

In *Kelly* v. *Manhattan Railroad Company* (112 N. Y., 450), the distinction between the different degrees of care to be observed by common carriers is again pointed out, and, except in respect to cases determining the liability of carriers for injuries sustained by passengers from causes enumerated in *Palmer* v. *The Pennsylvania Company* (*supra*), it is said that " the rule in such cases is that the carrier is bound simply to exercise ordinary care in view of the dangers to be apprehended." These decisions show that the courts have applied to common common carriers very rigid and exacting rules, calling for the highest degree of care and diligence, in matters pertaining to the construction of machinery and mechanical appli-ances necessary for the transportation of passengers, which rule is so applied as stated in *Kelly* v. *Manhattan Railroad Company*

(*supra*), "for the reason that a neglect of duty in such a case is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance."

It is also to be noticed that the reason for this rule in respect to machinery and mechanical appliances is, that passengers are compelled to rely solely upon the carrier, and have no opportunity to exercise their own judgment and discretion, but, in respect to those matters in which such judgment and discretion can be exercised, and in respect to cases where injuries result from other causes, the rule is thus stated in *Palmer* v. *The Pennsylvania Railroad Company* (*supra*) : "Railroad corporations, however, are not the insurers of the lives or safety of passengers upon their cars ; and, in order to render them so, it is essential to show that they have neglected the performance of some duty which, in the exercise of reasonable care, prudence and diligence, they owe to such passengers."

If we take the facts presented here by the plaintiff, it will be seen that the question presented was not whether there was any defect in the machinery or mechanical appliances necessary for the transportation of passengers, but whether the defendants were guilty of negligence in removing the tables when not in use by passengers, so as to give the passengers more space, and in leaving the sockets above the floor in the manner testified to by plaintiff. While the defendant's testimony denied that the sockets projected above the floor, we will assume the plaintiff's version to be true, that they did so project ; but it must be evident, even if we regard the presence of the sockets as the proximate cause of the injury, it was not a defect or a risk to be run by a passenger which was concealed, but open to common observation, and, as stated by the plaintiff, noticed by him when he first went aboard the vessel. We do not think, that for injuries resulting from the causes assigned by plaintiff, the defendant can be held to the strict rule which, in some instances, bind common carriers of passengers to the exercise of the utmost degree of care and foresight, making them responsible for injuries and loss arising from the slightest negligence, but rather, that the rule to be applied, from the facts here presented, is that the defendants were responsible for any loss or injury resulting from their failure to exercise reasonable care, prudence and diligence. We are of opinion, therefore, that the judgment and order appealed from

should be reversed and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., concurred.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.