Gavin v. State.—Syllabus.

We do not deem it necessary to consider any of the other errors assigned.

The judgment is reversed, and a new trial awarded.

WILLIE GAVIN, PLAINTIFF IN ERROR, VS. THE STATE
OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Challenge of Juror Must Precede Verdict—Section 2851 Revised Statutes Construed—Reasonable Doubt as to Any Essential Fact Necessitates acquittal—Murder in Second Degree.

1.  Section 2851, Revised Statutes provides that "no member of a grand jury which finds a bill of indictment shall be put upon a jury for the trial of that indictment, if challenged for that cause by the defendant." The inhibition here placed upon the serving of a grand juror as a member of the trial jury to try an indictment found by him as such grand juror is expressly made conditional upon a challenge being interposed by the defendant for that cause. The effect of the statute is not absolutely to disqualify a grand juror from service on a trial jury to try indictments found by such grand juror, but makes it only a ground of challenge for cause, which challenge the defendant may waive or not, as he sees proper. By accepting the juror, without exercising this right of challenge given him by the statute, the defendant waives such right, and it is too late after verdict to claim the benefit of it.

2.  When, to support a conviction of guilt, certain facts are essential, then a reasonable doubt as to either of these facts should produce the defendant's acquittal.

3.  When the proofs show that a homicide was perpetrated by an act necessarily and essentially imminently dangerous to another, and where there is no cause for the act, no provocation, and no passion, and was not accidental, but reckless and wanton, and evincing a depraved mind, regardless of human life, though without any premeditated design to effect the

death of any person, such a case falls within the definition of murder in the second degree.

4. The majority of the court (Taylor, C. J., dissenting) find the evidence sufficient to sustain the conviction.

Writ of Error to the Circuit Court for Wakulla County.

The facts of the case are stated in the opinion of the Court.

*Nat R. Walker and R. Don McLeod*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

TAYLOR, C. J.:

The plaintiff in error was indicted for murder at the Spring term, 1899, of the Circuit Court of Wakulla county, was tried at the Spring term of said court, 1900, and convicted of murder in the second degree, and from the sentence imposed takes writ of error.

The defendant moved in arrest of judgment and for a new trial upon the ground that the records of said court showed that one A. L. Sauls who sat upon the trial jury that returned the verdict against the defendant was also a member of the grand jury that found and returned the indictment upon which he was tried. These motions being overruled, such ruling is assigned as error. It appears from the bill of exceptions that the questioned juror was asked upon his *voir dire* by the State Attorney whether he had been a member of the grand jury that found the indictment, to which he an-

swered that he thought he was a member of that grand jury; that he was a member of the grand jury at the last term of this court. The State Attorney then informed him that the indictment had been found at the Spring term, 1899, upon which the juror replied that he did not think he had been a member of the grand jury at that time. Without any further examination by either the State or the defendant, he was then tendered by the State Attorney and accepted upon the trial jury, without challenge, by the defendant.

Section 2851 Revised Statutes provides as follows: "No member of a grand jury which finds a bill of indictment shall be put upon a jury for the trial of that indictment, if challenged for that cause by the defendant." The inhibition here placed upon the serving of a grand juror as a member of the trial jury to try an indictment found by him as such grand juror is clearly and expressly made conditional upon a challenge being interposed by the defendant for that cause. The effect of the statute is not absolutely to disqualify a grand juror from service on a trial jury to try indictments found by such grand juror, but makes it only a ground of challenge for cause, which challenge the defendant may waive or not as he sees proper. By accepting the juror without exercising this right of challenge given him by the statute the defendant waived such right, and it was too late after verdict to claim the benefit of it. The claim is made here that the answers of the juror on the *voir dire* served to mislead the defendant, and that he did not know until after verdict that such juror had in fact been a member of the grand jury that found the bill. No affidavit or other proof in support of this ground of the motion for new trial was presented to the

trial court, showing that defendant and his counsel were misled by the answers of the juror on *voir dire*, or that in fact he or his counsel did not know at the time the juror was accepted, of the existence of the fact authorizing the challenge sought to be made for the first time after verdict. The answers of the juror indicated that he was somewhat uncertain about the matter, and it was quite an easy matter to ascertain the facts by an examination of the minutes of the court then and there. Even if a challenge of this nature can be entertained after verdict, it can only be in cases where it is shown that neither the defendant nor his counsel knew of the existence of the fact constituting the ground for challenge until after the juror was sworn. Kelley v. State, 39 Fla. 122, 22 South. Rep. 303.

The only other error assigned is the denial of the motion for new trial on the ground that the verdict is not supported by the evidence. The adjudication of this assignment necessitates consideration of the evidence. The evidence in full, as disclosed by the record is as follows: Dr. Jacob H. Hunt for the state testified: I am a regular practicing physician, and was called professionally to attend Hayward Bryant the night he (Bryant) was shot. I found him shot in the back near the medium line to the right, lodging in one of the vertebrae. The ball entered in a direct line as if coming from a pistol held at about the height of the wound. I saw that it was only a matter of time when the wound would prove fatal. I gave something to alleviate his pain, and did not go to see him any more. Q. How long did he live after being shot? A. I don't remember the exact date, but he lived after being shot about three or four months.

Gavin v. State.—Opinion of Court.

Lucius Bryant (brother of deceased) testified as follows: Hayward Bryant is dead. He died by Willie Gavin shooting him. Willie Gavin shot him. We met him (defendant, pointing out Willie Gavin) in the road the 28th of August. We saw his pistol in his hand. He put it in his coat pocket and we passed. He shot twice; as he shot again Hayward fell and said Willie shot him. We were walking side by side, going toward our home. Willie was going the other way toward his home. When we met Willie it was about first dark. We had had time to walk about twenty--five or thirty-yards. Hayward Bryant was walking right by my side. We did not turn around to see after we passed Willie. I did not see Willie after he passed us in the road. Willie Gavin shot Hayward Bryant in Wakulla county, Florida. I did not see Willie do the shooting. I never had any talk with Willie afterwards. My brother was not married. Willie is not married. Cross-examined: We met Willie in the road and spoke to him. We were going north toward our home. Willie was going south toward his home. Buddie Hayward asked him if he was working the section yet. He said no, he had given up that job. They both spoke friendly when they met. I reckon they were always friendly. Q. Did you not tell Judge Giles in the preliminary examination that your brother Hayward and Willie Gavin were then and had always been perfectly friendly? A. Yes, I told Judge Giles at the preliminary trial that they had always been perfectly friendly. Q. Did you not tell Judge Giles that there had never been any trouble between Hayward and Willie at any time? A. Yes, I told him that there had never been any trouble between them that I ever heard of. Q. Is Willie Gavin cousin to you and your brother

Hayward? A. Yes sir, so said. Q. When your brother was shot how far was he from where you had met Will Gavin in the road? A. He was about twenty-five or thirty yards from where we met Willie. Q. How far was Willie then from where you had met him? A. We had got about twenty-five or thirty yards, and he had got about twenty-five or thirty yards from where we met in the road. Q. How do you know it was abut twenty-five or thirty yards? A. I guess it was about twenty-five or thirty yards from the sound of the pistol. Q. Wasn't there a bend in the road where you met Will Gavin? A. Yes, there was a bend in the road right where we met him. Q. Could you have seen Willie after you had passed him in the road? A. Yes, if it had been daylight. Q. Was it daylight? A. No, it was about first dark. Q. Did you see Willie after you had passed him? A. No sir. Q. How do you know it was twenty-five or thirty yards going north and twenty-five or thirty yards going south from where you met them? A. I judged the distance from the sound of the pistol. It sounded like it was about twenty-five or thirty yards. Re-direct: Q. Did you mean to say that you and your brother Howard were about twenty-five or thirty yards from Willie when he shot? A. Yes sir, I meant that we were about twenty-five or thirty yards from him when he shot. Q. Was it at the bend of the road that you met Willie Gavin? A. Yes sir, it was at the bend that we met. Q. Was it much of a bend? A. No sir, it was not much of a bend. Re-cross: Q. Did you not at the preliminary trial point out that old Mooring house yonder and tell Judge Giles that you and your brother were about as far from Willie Gavin as from the court house here to that old Mooring house when he shot? (The old

Mooring house which stands about one hundred and fifty yards from the court house was pointed out to the jury and witness.) A. Yes sir, if you call that distance twenty-five or thirty yards. Said it was that far. The writer of this opinion finds it impossible to arrive at the conclusion that this evidence is sufficient to sustain the verdict found. The established rule of law in criminal cases is that proof beyond reasonable doubt must be had as to all facts necessary to make out the case of the prosecution. When, to support a conviction of guilt, certain facts are essential, then a reasonable doubt as to either of these facts should produce the defendant's acquittal. Wharton on Homicide, §§ 646, 647, 648, 649 and 650; Commonwealth v. McKie, 1 Gray 61, S. C. 61 Am. Dec. 410; Commonwealth v. Kimball, 24 pick. 366; State v. Taylor, 1 Houst. Cr. Cas. (Del.) 436. The vitally essential fact necessary to the legal conviction of the defendant in this case was to prove that he fired the fatal shot. Did he, beyond a reasonable doubt, fire it? The writer thinks that the proofs leave the answer to this vital question in such a hopeless state of doubt and uncertainity as to render the verdict found legally improper, but the majority of the court think otherwise, and that the evidence upon this point is sufficient to sustain the conviction. If the evidence is sufficient to establish the fact that defendant fired the faltal shot, then the whole court are of opinion that the verdict of the jury must be sustained. The homicide was perpetrated by an act necessarily and essentially imminently dangerous to another, indeed to two others. There was no cause for the act, no passion, no provocation. It was not accidental, but reckless and wanton, and evinced a depraved mind on the part of the defendant, regardless

of human life. This brings the case within the definition of murder in the second degree (Alvarez v. State, 41 Fla. 532, 27 South. Rep. 40), unless the homicide was perpetrated from a premeditated design to effect death, in which case it would be elevated to murder in the first degree. The court is not prepared to say that the jury would not have been justified in finding defendant guilty of murder in the first degree from this evidence (conceding that it identifies defendant as the guilty agent) but the fact that the evidence would have justified such a verdict does not require us to set aside the verdict for the lower degree. Morrison v. State, 42 Fla. ——, 28 South. Rep. 97 .

No errors being adjudged, the judgment of the court below is hereby affirmed.