JOSE FERNANDEZ VASQUEZ, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. Where on the trial of the defendant for murder, a shirt which

had been used in argument, but not introduced in evidence, was carried by the jury into the jury room when they retired to consider their verdict, and this was done in the presence of the defendant's attorney, who made no objection to the act of the jury, and did not call the judge's attention to it, and it is not shown that the jury made any use of the shirt, such action of the jury is not a sufficient ground for a new trial.

2. Where there is evidence from which the jury might have concluded that the defendant was the aggressor in the difficulty in which the defendant killed the deceased, a proper charge applicable to that theory is not erroneous.

3. A charge intended for the benefit of the defendant, and which could not under the evidence have been harmful to him does not furnish a good ground for a new trial.

4. The following charge is not erroneous: "The defendant is presumed to be innocent until he is proven to be guilty beyond a reasonable doubt. He is entitled to every reasonable doubt arising from the evidence, and a reasonable doubt is one conformable to reason, a doubt which a reasonable man would entertain. It does not mean a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison, and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

5. Proof of an intent upon the part of the defendant to kill a particular individual does not exclude a conviction of murder in the second degree, under the statute of Florida defining that offence.

This case was decided by Division B.

Writ of Error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*H. C. Gordon,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

HOCKER, J.—At the fall term, 1906, of the circuit court of Hillsborough county, Jose Fernandez Vasquez, hereinafter called the defendant, was indicted for the murder of Pedro Pablo Bozaqoitia. At the January term, 1907, a trial occurred and the defendant was convicted of murder in the second degree and recommended to the mercy of the court. He was sentenced to the state prison for life and seeks a reversal of this judgment on writ of error.

The first, second and third assignments of error are not argued. The fourth assignment is as follows: "That the jury were permitted, without the knowledge or consent of the court and without any agreement of counsel to carry into the jury room the shirt used by the state attorney to illustrate the manner of cutting."

There is no proof in the record that the jury carried the shirt used by the state attorney into the jury room, except the inferential proof afforded by the judge's order overruling the motion for a new trial. In this order the judge deals with the foregoing, and another ground of the motion for new trial in which latter objection is made to the alleged argument of the state attorney, of which also, there is no other proof than that afforded by the order of the judge. That order is as follows: "The court considers that the argument of state attorney was a legitimate reply to argument of defendant's counsel; and further no objection was made to the argument of the state attorney by the defendant's counsel who were present and heard the same. Counsel for defendant consented to the jury taking the knife when they started to consider their verdict. The knife was in evidence. The shirt was not in evidence and was taken

by the jury at the same time as the knife was and in presence of defendant's counsel who made no objection to jury taking the shirt. The court did not note that jury took shirt. Motion denied and defendant allowed ninety days to present bill of exceptions. In open court the prisoner and his counsel being present this 7th day of February, A. D. 1907, and defendant excepts. Minor S. Jones, Judge."

The facts stated in the order of the judge are to be taken as true, and it is there shown that the shirt was taken by the jury, in the presence of the defendant's counsel, who did not object. It is not shown that the jury made any use of the shirt, and, under these circumstances, we think it is clear that the defendant waived any right to object to the action of the jury. Chadwick v. Chadwick, 52 Mich. 545, 18 N. W. Rep. 350; State v. Nichols, 29 Minn. 357, 13 N. W. Rep. 153; State v. Tucker, 75 Conn. 201, 52 Atl. Rep. 741; Bruswitz v. Netherlands American Steam Nav. Co., 64 Hun. 262; 12 Cyc. 676; 12 Ency. Pl. and Pr., 553-4.

The defendant's counsel in their brief undertake to present the fifth, sixth, seventh, eighth and ninth assignments of error together. There is no argument upon the fifth assignment.

The sixth assignment is based on the following charge: "The court further charges you that the aggressor in a personal difficulty—one not reasonably free from fault—can never be heard to acquit himself of liability for its consequences on the ground of self defense." And it is insisted that as shown by the evidence the defendant (plaintiff in error) was not the aggressor, and therefore the charge was inappropriate, and misleading.

Celestino Boni, a state's witness, testified that he saw the difficulty in which the deceased was killed. He refers to the deceased as the Mexican, and the de-

fendant as the Spaniard. He says: "The Mexican man was walking down the street and the Spaniard called him and said 'come here.' The Spaniard was on the sidewalk, and the Mexican on the street; they were about fifteen feet apart; the Mexican stopped and turned around. The Mexican had an umbrella, and he motioned it at the Spaniard this way (indicating). And the Spaniard cut the Mexican with a razor. The Spaniard reached down in his coat and got out a razor and made a swipe at the Mexican, and grabbed his umbrella, and cut him. He didn't cut him the first time he cut at him and missed him, and then made another cut at him and this time he cut him. The Mexican did like that with the umbrella (motioning back and forth), and run back, and the Spaniard grabbed the umbrella and cut him. Then is when he cut him across the stomach, when he grabbed the umbrella. The Mexican run off and the Spaniard tried to cut him again, then the Spaniard shut the razor and run to the alley and throwed the razor away," &c. Joseph Aldez, a state's witness corroborates the foregoing.

It appears from the defendant's own testimony that the deceased, some time before the killing, had circulated rumors on the streets that he was living with the defendant's wife, and that the defendant had asked him about it, and that deceased said "they were lies, they were rumors." From the standpoint of this evidence we are not able to say there is no proof tending to show that the defendant was the aggressor. The fact that there was evidence on the part of the defendant tending to show he was not the aggressor does not make the quoted charge inapplicable. There is no other objection to this charge.

The seventh assignment of error is based on the following portion of the court's charge: "The court further charges you that a deadly weapon is any weapon

which is likely from the use made of it at the time to produce death or great bodily harm. It is for you to say from all the evidence in this case whether an umbrella such as testified to by the witnesses is a deadly weapon. This charge was error because the homicide was not committed with an umbrella, and the charge was, therefore, misleading and inappropriate."

As the charge was evidently intended for the benefit of the defendant, on his theory that the deceased assaulted him with an umbrella, we fail to see how it was misleading or inappropriate. The contention in the brief is that it does not preserve to the defendant the benefit of reasonable fear of great bodily harm as well as death. This contention disregards the fact that the court charged "a deadly weapon is any weapon which is likely to produce death *or great bodily harm.*"

The eighth assignment of error is based on the following portion of the judge's charge: "The defendant is presumed to be innocent until he is proven to be guilty beyond a reasonable doubt. He is entitled to every reasonable doubt arising from the evidence, and a reasonable doubt is one conformable to reason, a doubt which a reasonable man would entertain. It does not mean a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison, and consideration of all the evidence leaves the minds of the jurors in that condition that they can not say they feel an abiding conviction to a moral certainty of the truth of the charge."

It is objected that this charge is erroneous in two respects; first, that the jury might well infer from it that the defendant would not be entitled to "every reasonable doubt arising from the lack of evidence," and, second, that the gist of the same is that the jury were

instructed that there might be such a doubt as must satisfy reasonable minds that the accused was not guilty.

The first contention is untenable because in the first sentence the jury were instructed that the defendant is *presumed to be innocent until proven* to be guilty beyond a reasonable doubt." It necessarily follows that if there was a lack of evidence, there was a lack of proof as to his guilt, and he must be regarded by the jury as innocent.

We think the second contention is also unsound. It may be that the attempt to define a reasonable doubt is attempting "to paint the lily," but the language objected to has been long in use in this state, and has been regarded as a sufficient definition. The doctrine of Wood v. State, 31 Fla. 221, text 240, 12 South. Rep. 539, does not apply to such a definition, for we think it is perfectly clear there is a very great difference between a "doubt conformable to reason—a doubt which a reasonable man would entertain," and a "doubt which would satisfy a reasonable man." It is difficult to conceive how a doubt could ever be satisfying, and because it is not satisfying is the very reason why a defendant should not be convicted when a reasonable doubt of his guilt exists in the minds of reasonable men. It is contended that such a definition furnishes no standard, and is "vague, indeterminate and misleading." The answer to this is that jurymen are presumed to be reasonable men, and that in the very nature of things there can be no exact standard by which a reasonable man can be judged. It is one of those questions which must be left to the intelligent judgment of men, in the exercise and application of experience and common sense. Sims v. State, decided at the present term.

The ninth assignment is not argued.

The tenth and last assignment is, "Because the verdict of the jury finding the defendant guilty of murder

in the second degree was not justified by the evidence." This ground is based on one of the grounds in the motion for a new trial, which was overruled, and to which ruling an exception was noted.

It is contended here *first,* that the evidence was not such as would, therefore, have sustained a conviction of murder in the first degree, and second, that our statutory definition of murder in the second degree is as follows: "When perpetrated by any act imminently dangerous *to others* and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual," and that the evidence does not show a state of facts which would come under this definition. As to the first contention, we cannot agree that there was no evidence which would have sustained a verdict of murder in the first degree. The evidence tends to show that there was ground for bad feeling on the part of the defendant towards the deceased, because of what the deceased had said about living with defendant's wife, and this feeling was doubtless aroused into intensity by certain exceedingly indecent and insulting language which the defendant says the deceased used towards him when they met just before the fatal encounter. The state's evidence tends to show that the defendant first called to the deceased and brought on the difficulty, and that the deceased backed away from him. Under such circumstances we cannot say that the killing was not from premeditated design. As to the second contention the defendant's attorneys have mistaken the language of our statute defining murder in the second degree, and have made an argument here upon this erroneous theory. The language of our statute thus defines murder in the second degree: "When perpetrated by any act imminently dangerous *to another,* and evincing a depraved

mind regardless of human life, although without any premeditated design to effect the death of any particular individual." A change of the law was made by the Revisers in 1892, and the words *"to another"* were substituted for *"to others."* The law as thus changed was construed by this court in Marshall v. State, 32 Fla. 462, 14 South. Rep. 92, and Alvarez v. State, 41 Fla. 532, text 540, 27 South. Rep. 40, and it is there held that "proof of an intent upon the part of the accused to kill a particular individual, or *"another,"* does not exclude a conviction of murder in the second degree. If we eliminate the theory of premeditation from this case, then from the standpoint of the state's evidence the defendant who was on the sidewalk accosted the deceased who was on the street, and called him to "come here,"—the deceased turned around, they met, the defendant drawing a razor and cutting at the deceased with it, the latter defending himself with an umbrella, and backing away from defendant. At the second stroke of the razor the defendant ripped open the stomach and bowels of the deceased, giving him a wound from which he died. If the jury took this view of the evidence, and they may have done so, we cannot say they had no ground for finding a verdict of murder in the second degree. Gavin v. State, 42 Fla. 553, 29 South. Rep. 405.

The judgment of the circuit court is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.