FRANKLIN C. THOMAS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The brief of plaintiff in error says: " As to the first assignment of error, I shall pass without comment, but most respectfully call the attention of the court thereto :" *Held*, That this and other assignments submitted in like language were submitted without argument, and therefore considered abandoned.

2. An assignment of error is, that " the verdict of the jury is contrary to the instructions of the court as to the law of the case." The only argument made upon this assignment of error is that the court is invited to read six pages of instructions and thirty pages of testimony, and compare them and ascertain if the assignment is not well founded : *Held*, That the court is not required to search a mass of matter for an error supposed to be in it; that all presumptions are in favor of the regularity of the judgment below, until some error therein is specifically designated: *Also held*, That such an invitation to a court to examine a voluminous record in search for error is no argument of the assignment of error; and that the same might be considered abandoned.

3. The entire argument upon an assignment of error was as follows: "As to the sixth assignment I shall also pass, and ask the court's attention thereto: and when considered in connection with all the evidence in the case, I contend the same was grave error:" *Held*, That a bare assertion that a ruling complained of was error is no argument, and states no more than had already been stated in the assignment of error.

4. When no more is stated in brief of counsel as to any assignment of error than a bare assertion that a ruling of the lower court was erroneous, no reasons being given, no principles of law

110　　　　　SUPREME COURT.

Franklin C. Thomas v. The State of Florida.—Opinion of Court.

stated, and no authorities cited, the assignment of error may be regarded as abandoned by reason of failure to argue the same, unless the error complained of is so glaring and patent from the record that no argument is needed to demonstrate it.

5. The evidence in this case examined and found insufficient to support the verdict.

6. On a trial for embezzlement, the accused being charged with appropriation of property which came to his hands by virtue of his being the agent and attorney of another, which agency and attorneyship were denied, an instruction of the court to the jury which eliminates from the case the nature of the acquisition of possession by the defendant is erroneous.

Writ of Error to the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*Isaac L. Purcell*, for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

LIDDON, J.:

The plaintiff in error was convicted in the court below of the crime of embezzlement. This is the second time the case has been before this court. In 33 Fla. 464 *et seq.* (15 South. Rep. 225) the information upon which the trial and conviction was had is fully set out. On the former writ of error the judgment was reversed and a new trial ordered, and the result has been a second conviction and writ of error. Ten assignments of error are made. Only the second, third, eighth and ninth are argued.

The counsel for plaintiff in error says in his brief: "As to the first assignment in error, I shall pass without comment, but most respectfully call the attention of the court thereto." Practically the same is said as to the fifth, sixth and seventh assignments. These

:assignments are submitted without argument, and are therefore considered abandoned. Hayes vs. Todd; 34 Fla. 233, and authorities cited on page 236 (15 South. Rep. 752, 753).

The fourth assignment of error, which was also one of the grounds of the motion for new trial, is as follows: "The verdict of the jury is contrary to the instructions of the court as to the law of the case." The only attempt at argument upon this assignment contained in brief of counsel for plaintiff in error reads as follows: "As to the fourth assignment: The verdict is contrary to the instructions of the court as to the law of the case. I would most respectfully call the attention of the court to the charges asked by defendant and given by the court, which said instructions will be found on pages 36–40 inclusive, also the court's general charge, and compare the evidence, and then see if the finding of the jury is not contrary to the charge and instructions of the court." In this argument, if it can be called an argument, no error is specifically pointed out as having been committed by the court, but the counsel invites us to the reading of six pages of instructions given by the court, and thirty pages of closely typewritten testimony, in order that we may ascertain for ourselves what he is talking about. We do not think this duty devolves us. We are not required to search this mass of matter in order to ascertain the error alleged to exist in it. All presumptions are in favor of the regularity of the judgment below until some error therein is specifically designated. To invite a court to examine nearly the whole of a record somewhat voluminous, in order to ascertain if error exists in it, is no argument of an assignment of error, and this assignment might also be considered abandoned. Jacksonville, T. & K. W. Ry. Co. vs. Griffin, 33 Fla. 602, 15 South.

Rep. 336; Elliott's Appellate Procedure, secs. 440, 445, and authorities cited.

The entire argument (if it can be so called) upon the sixth assignment of error was as follows: ''As to the sixth assignment I shall also pass, and ask the court's attention thereto; and when considered in connection with all the evidence in the case, I contend the same was grave error.'' This argument (?) is only an improvement upon that relating to the fourth assignment, in this: as to that assignment the counsel also invited us to wade through and ascertain if there was error, which was not even positively alleged to exist in the matter complained of. As to the present (the sixth assignment) the counsel contents himself with the bare assertion that he contends that the ruling complained of was grave error. This assertion is no argument. No more is stated than had already been alleged in the assignment of error. When no more is alleged in the brief, as to any assignment of error, then a bare statement that a ruling of the lower court was erroneous, no reasons being given, no principles of law stated, and no authorities cited, the assignment of error may be regarded as abandoned by reason of failing to argue the same. Upon this point it has been said: ''It is not enough to assert in general terms that a ruling of the trial court is wrong; a fair effort must be made to prove that it is wrong or the point will not be considered as having been made. Counsel can not make a point in an appellate tribunal by a naked general assertion for such an assertion will not be heeded. * * In order to secure so much as notice of the point stated they must support it by a fair effort, adducing arguments and, if they can, citing authorities. A bare designation of the ruling as erroneous, without discussion, is not sufficient to entitle counsel to success-

fully insist that he has made a point, but a discussion, even though it be not sufficient to secure assent, will save the counsel from the reproach of having waived a point by a failure to do his duty. Where a ruling is asserted to be erroneous, the party making the assertion must overcome the presumption that it was correct, and this he can not do otherwise than by specifying the particular error which invalidates the ruling." Elliott's Appellate Procedure, sec. 445. See also various cases cited in note to this section. We approve the propositions laid down in the citation, to the extent that an assignment of error upon which no other argument is made than a bare assertion that the ruling of the court upon which it is based is erroneous should be considered as abandoned, unless the error complained of is so glaring and patent from the record as to require no argument to support it, which is not the case here.

The second assignment of error is, that the court erred in overruling the motion for a new trial. The third, which is but a repetition of one of the grounds of the motion for new trial, is, that the verdict was contrary to the evidence, and without evidence to support it. In view of the fact that two juries have found the same verdict against the defendant, we are loath to disturb the present verdict. Upon a most thorough and careful examination of the same we have reached the conclusion that it is not sufficient to support the verdict. The first count of the information charged the defendant with the embezzlement of two promissory notes which came to his possession by virtue of his being the agent and attorney of one Charles Brown. The second count charged the embezzlement of $700 in money which came to his possession in a similar

114 SUPREME COURT.

Franklin C. Thomas v. The State of Florida.—Opinion of Court.

capacity. The evidence shows the two counts refer to the same transaction, the money alleged to be embezzled being the proceeds of discounting the two notes mentioned in the first count. The only witness whose testimony bears directly upon the point of the capacity in which defendant received the notes in question was that of Charles Brown, the alleged owner of them. His testimony upon the subject was exceedingly vague, uncertain and unsatisfactory, and was contradicted in essential matters by other witnesses and circumstances, and by proof of statements, made out of court, contradictory to his testimony. Besides, the most of the incriminating testimony of this witness was drawn from him by repeated questions which were highly leading and objectionable. The defendant claimed possession of the notes by reason of having bought them from Brown after the relation of attorney and client between them had ceased. The notes upon the back of them bore endorsements of transfer from Brown to the defendant. The signature of Brown to these transfers (he being an illiterate man) was made with his mark. The testimony of Brown as to the manner in which the defendant came into possession of the notes, as shown by the record, was as follows: "*Question*—Did you place the notes in the hands of Thomas or with him for collection? *Ans.*—I had no intention of giving them to him. I supposed Mr. Thomas would collect the notes. Well, you know, as the notes become due I would come down to get the money. *Question*—Will you swear that you directly or indirectly gave the notes to Thomas for collection or for any other purpose? *Ans.*—I did not give them to him at all for anything. *Question by the court*—Brown, did you leave the notes with Thomas for collection or for any other purpose than to sell them to

him? that is what is meant by the question asked you. *Ans.*—No sir; I never left them with him at all. I thought I had them all the time. If he got them, it must have been from some one else. I did not know Mr. Thomas had my notes. *Question by defendant's attorney*—Did Thomas ever give you his note for $300, and $30 in money for the transfer of the note of Mr. Teague? *Ans.*—No sir; he never did. Understand that Mr. Thomas exchanged notes with me, but I did not sell them to him. When the notes come due I came down to get the money, and went to Mr. Teague and he put me off, and told me to see Mr. Thomas. I may have signed the transfers to him; I do not remember. I will not swear that I did not. *Question by defendant's attorney*—Brown, when was it that you placed these notes in Thomas' possession, or with him for collection, if you ever did? *Ans.*—I do not know, if I ever did, I do not remember it. It seems Mr. Thomas was exchanging notes with me all along. *Question*—For what purpose did Thomas pay you money, as you said in your direct testimony, if not on these notes? *Ans.*—I do not know; that had nothing to do with the notes; that was outside. *Question*— What did you do with the note Thomas gave you for seven hundred dollars? *Ans.*—I gave it to my atttorneys, Mess. Miller & Spencer. I gave it to them when Mr. Thomas would not pay me and told me I must be a fool. *Question*—How is it you can remember distinctly what you did with the note Thomas gave you for seven hundred dollars, and do not remember what you did with the notes Mr. Teague gave you, after they became due? *Ans.*—I did not know I had Mr. Thomas' note until my lawyers told me, when I carried it to them for them to collect my money out of Mr. Thomas for me. *Question by the court*—Brown, in order to

make it clear, if Thomas was your attorney, and you depended on him to collect your money for you from Mr. Teague, why did you carry the notes to Mr. Teague to get the money; that is, why did you go to Mr. Teague for it instead of Thomas? *Ans.*—Well, Judge, you want me to tell the truth, I did not have any confidence in this man Thomas ever since I heard that he went down south and got in jail. When he came back I told him to give me up all the papers I gave him to sell the land, but he told me that he would come out all right. I never did have any confidence in the man after then, but let him go on and sell the land. This was before I sold the land and got the notes from Mr. Teague. Philmore Simmons told me that Thomas was handling his lands, and was all right; and others told me he was all right, so I trusted him to make the trade for me. *Question by defendant's attorney*—Did you ever make any other contract with Thomas to collect the amount of the notes or act as your agent or attorney than that you made in giving him the power of attorney? *Ans.*—I made no other contract with him; he was to sell my land and get my money. That is all the contract I made with him. I was to pay him seven cents on the dollar. Simmons directed me to him as a suitable person, and I thought he was all right." The testimony of Brown, upon the subject of the transfer and endorsement of the notes, as shown by the record, was as follows: "When Mr. Teague made the notes to me, my wife was in town. When we left Mr. Teague's office Mr. Thomas said he had some writing to do on one of the notes, and my wife carried them to his office to get the papers. I was hitching up my horse. I suppose he wrote on them. He said when the money was due, for me to come down and get it. I came, and he put me

JUNE TERM, 1895.          117

Franklin C. Thomas v. The State of Florida.—Opinion of Court.

off two weeks; and I came again, and he as good as drove me out of his office, and said I must be a fool. I never sold any notes to him in my life. I do not know anything about the transfers on the notes. One day I came to town and told Mr. Thomas I wanted a little money, as much as a dollar; he said I could get it if I would sign a paper. We went into an office and signed it at an old white man's desk, and we went on to the bank, and he got two dollars and gave me one. I thought something strange, but said nothing. I employed him to sell my land and get my money, and if he wanted anything signed, I thought it my duty to sign it. He never paid me anything on the notes. He paid me a little money on $60 that was not in the notes; he paid me in small driblets, twenty-five cents, one dollar, and I think he gave me about $15 in all. He never paid me anything to assign the notes to him. I never received any money from him on them." The county solicitor read the endorsements as they appeared on the back of the notes, and asked witness if he made such knowingly, and if it was read to him before he signed it, if he signed it at all, to which he answered "No," that he did not sign the transfers, and they were not read to him. "*Question*—You considered him your lawyer, and you would sign papers he would tell you to sign, would you not? *Ans.*— Yes, sir; when he told me to do anything; I thought it my duty to do it. *Question*—Then, if you signed and transferred those notes to Thomas, it was for the purpose of having him collect your money for you, was it not? *Ans.*—Yes, sir; Mr. Thomas was my attorney, and I depended on him to get my money; This was in Marion county, Florida."

Barney Simmons, a witness for defendant, testified to being present when one of the notes was transferred

by Brown to defendant, and witnessed the payment of some money in the trade by defendant to Brown. This witness, and also one Philmore Simmons, testified to statements made to them by Brown, to the effect that he had traded the Teague notes (alleged to have been embezzled) to the defendant. The testimony of Brown is too contradictory in itself, too indefinite and unsatisfactory, to warrant a conviction.

The court charged the jury as follows: "If you find from the evidence in this case, beyond a reasonable doubt, that the defendant substituted his notes to Charles Brown for the notes of Samuel W. Teague to Charles Brown, and without the knowledge or consent of said Brown, and afterwards collected the notes from Teague and fraudulently converted the same, or any part thereof, to his own use, or otherwise disposed of the same, or any part thereof, without the consent of said Brown, then you will find the defendant guilty." This charge is made the subject of exception and an assignment of error which is argued before us. The statute under which the information was found (sec. 2457 Rev. Stat. of Fla.) refers to an embezzlement by an officer, clerk, agent or servant of another. The penalty is directed against such officer, clerk, agent or servant of another who embezzles or fraudulently converts to his own use without consent the property which has come into his possession or is under his care by nature of such employment. The charge complained of is faulty because it eliminates from the question of defendant's guilt the nature of his possession. The defendant claimed that the notes were not in his hands by virtue of his being the servant or agent of Brown. If this be true, he can not be found guilty under the statute under which he was accused and tried; and if he is guilty of any crime, it is of some other offense

not covered by that statute. The charge should have been qualified and limited so as to be only applicable to the notes which came to the hands of the defendant as the attorney and agent of Brown. Quite a number of charges were given by the court, to which no exception was taken. All that defendant requested were given. It may be that the error in this charge was cured by some that were given. This point we do not determine, as the judgment necessarily has to be reversed upon the insufficiency of the evidence. We simply call attention to the error in the charge, that it may be avoided in any future trial of the case.

The judgment is reversed and a new trial awarded.