Clinton et al. v. The State of Florida—Syllabus.

BUCK CLINTON AND EDWARD CLINTON, PLAINTIFFS IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Prior to the adoption of Special Rule 6 on the 2nd day of March, 1905, Rule 103, adopted at the April Term, 1873, governed in the preparation of transcripts and bills of exceptions in criminal cases. Special Rule 6 gives the plaintiff in error in criminal and *habeas corpus* cases the option to have the transcript of the record and bill of exceptions made up, settled and certified, either in accordance with Special Rules 1, 2 and 3, adopted on the 2d day of March, 1905, or in compliance with such Rule 103. The respective modes of procedure must not be blended, but one or other of such modes must be selected and followed.

2. It is the duty of a party resorting to an appellate court to see that his transcript of record is properly prepared, in compliance with the rules of court, and to make the errors complained of clearly to appear.

3. Whether an infant of tender years has sufficient mental capacity and sense of moral obligation to be competent as a witness is a question for the discretion of the trial judge, and his ruling in that regard will not be disturbed

by an appellate court, except in case of a manifest abuse of discretion or where the witness is admitted or rejected upon an erroneous view of a legal principle.

4. It is the duty of the trial court where an infant of tender years is offered as a witness, especially in a criminal case, to examine him and ascertain whether he has sufficient intelligence and understanding of the nature and obligation of an oath to be a competent witness, and such investigation should be carried far enough to make the infant's competency apparent.

5. Intelligence and not age is the proper test by which the competency of an infant as a witness must be determined, and where it appears that such infant had sufficient intelligence to receive just impressions of the facts respecting which he is to testify, and sufficient capacity to relate them correctly, and has received sufficient instruction to appreciate the nature and obligation of an oath, he should be admitted to testify.

6. Where it appears to the trial judge that an infant offered as a witness does not sufficiently understand the nature and obligations of an oath, it is within his discretion to permit such infant to be properly instructed in that respect and afterward to be sworn, provided such infant be of sufficient age and intellect to receive instruction.

7. The common law rule has been changed in this State, and belief neither in a Supreme Being nor in Divine punishment is requisite to the competency of a witness.

8. The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial, but, in laying the foundation for such impeachment, it is necessary to inquire of such witness as to the time, place and person involved in such supposed contradiction, before proof of such contradic-

tions may be submitted to the jury, the statute requiring that "the circumstances of the supposed statement, sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made such statement."

9.  When the defendant in a criminal case offers himself as a witness therein he thereby puts himself on the same footing as any other witness and may be examined, cross-examined or impeached as any other witness, but, while this is true, the state cannot introduce evidence to impeach the general character of the defendant, unless he has first put his character in issue.

10.  An application for a postponement or a continuance is addressed to the sound judicial discretion of the trial court, and the ruling of such court either granting or denying such application will not be disturbed by an appellate court, unless an abuse of this discretion is clearly shown; but where such an abuse is manifest, especially in a criminal case, it is the duty of an appellate court to interfere, in the furtherance of justice.

11.  It is error sufficient to reverse a judgment in a criminal case for the trial court to suffer counsel for the state, against proper objections of defendant, to state in his argument to the jury facts pertinent to the issue and not in evidence, or to comment upon facts calculated to prejudice the defendant which have no bearing whatever upon the issues, and evidence of which would have been excluded, if offered, or to assume such facts to be in the case when they are not.

12.  Remarks of counsel in the argument of a criminal prosecution outside of the evidence and the reasonable bounds of argument, having no relation to the issues in the case and intended or calculated to excite the passions and influence the minds of the jury against the defendant, should be promptly checked and prohibited by the trial court, and

where such remarks are objected to by the defendant and the trial court overrules such objection and refuses to interfere, an exception to such ruling will be well assigned and will be sufficient ground for the reversal of the judgment.

This case was decided by Division A.

Writ of error to the Criminal Court of Record for Volusia county.

*S. J. Hilburn,* for Plaintiffs in Error;

*W. H. Ellis,* Attorney General, for Defendant in Error.

SHACKLEFORD, C. J.: An information was filed in the Criminal Court of Record for Volusia county, on the 10th day of October, 1905, against the plaintiffs in error, hereinafter referred to as the defendants, charging Buck Clinton with the wilful and malicious burning of a certain dwelling-house, therein described, and Edward Clinton with being an accessory before the fact of such burning. A trial was had before a jury in May, 1906, which resulted in the conviction of the defendants, and they were sentenced to confinement in the State prison at hard labor, Buck Clinton for a period of ten years and Edward Clinton for a period of five years. The defendants seek to have this judgment and sentence reviewed here by writ of error, returnable to the present term.

The transcript of the record in this cause, including the bill of exceptions, is poorly prepared and is not in compliance with the requirements of the rules of this court. Special Rule 6, adopted by this court on the 2nd day of March, 1905, found on page 33 of the Rules of the Supreme Court, prefixed to 51 Fla. (page XV prefixed to 37

South. Rep.), gives the plaintiff in error the option in criminal and *habeas corpus* cases to have the transcript of the record and the bill of exceptions "made up, settled and certified, either in accordance with Special Rules 1, 2 and 3 of these rules, or in compliance with the provisions of Rule 103 for the government of the Circuit Courts in Common Law Actions, adopted at the April Term of the Supreme Court, A. D. 1873," found on page 34 of such rules, prefixed to 14th Fla. However, the respective modes of procedure prescribed in such Special Rules 1, 2 and 3 and Rule 103 must not be blended, as was done in the instant case, but one or the other of such modes must be selected and followed. Until the adoption of Special Rule 6, on the 2nd day of March, 1905, Rule 103 governed in the preparation of transcripts and bills or exceptions in criminal causes. It is the duty of a party resorting to an appellate court to see that his transcript of record is properly prepared, in compliance with the rules of court, and to make the errors complained of clearly to appear. See Worley v. Wade County Security Co., 52 Fla. 666, 42 South. Rep. 527; Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392, and authorities therein cited; Akin v. Morgan, 50 Fla. 173, 39 South. Rep. 534; Porter v. Ewing, 51 Fla. 265, 39 South. Rep. 993. Also see State v. Madoil, 12 Fla. 151, text 155.

The first assignment is as follows: "The court erred in overruling the objections of the defendants to the testimony of Mitchell Aiken, and in permitting said Mitchell Aiken to testify in the case."

The bill of exceptions discloses the following proceedings in regard to this witness: "On the first day of May, 1906, during the term of said court, an issue joined be-

tween the said parties came on to be tried before a jury, and thereupon the plaintiff, to maintain an issue on its behalf, then and there produced as a witness, and offered to prove by him, that Edward Clinton, one of the defendants herein, told him, this witness, and Buck Clinton, the other defendant, to burn the Goodrich house, the property mentioned in the information or indictment in this case, and also that the said Buck Clinton, in company with this witness, did set fire to and burn said house on August 14th, 1905. But to the admission of said Mitchell Aiken as a witness, the defendants did then and there object on the grounds that said witness was incompetent on account of his age and knowledge, and on account of his not having sufficient knowledge as to the meaning of an oath or the obligations thereof, and for the purpose of testing his competency the following questions were propounded to said witness, and he made the following answers thereto respectively, viz: Q. How old are you? A. Fourteen years old. Q. Do you know whether it is right to tell the truth or story? A. Yes sir. Q. What will happen to those who tell lies? A. I don't know. Q. Do you know whether it is right to tell the truth or a falsehood? A. To tell the truth. Q Have you ever been to school? A. Yes, sir. Q. How long did you go to school? A. I went four months this year. Q. How far along did you get in your books? A. I started at my abc's and went through my second reader. Q. You do not know what would happen to you if you told a falsehood? A. No sir. Q. How do you know that it is wrong to tell them? A. I know it is wrong. Q. Have you attended Sunday-school? A. No sir. Q. Have you ever read the Bible? A. No sir. Q. Have you ever been taught any-

thing about God? A. No sir. Q. In what State do you live? A. I don't know. Q. You do not know what State you live in? A. I don't know no sir. Q. What nation? A. I don't know sir. Q. If you were to testify to a falsehood what would happen? A. I don't know sir. Q. What would happen to you if you told a story? A. The one I am living with would whip me. Q. Is that all? A. Yes sir. Q. What would become of you if you did? A. I don't know sir. Q. Do you know whether it was wrong to burn the Goodrich house? A. No sir, I did not.

But to the admision of the said Mitchell Aiken as a witness defendants then and there renewed their objections, on the grounds that the said witness was incompetent, and that his answers to said questions demonstrated that he knew nothing of the obligations of an oath, and was not qualified to testify in this case against the defendants. But the said judge did then and there overrule said objections and admitted said evidence, and permitted said witness to testify in the case fully against the defendants. To which ruling the defendants then and there excepted."

In the case of Griffin v. State, 48 Fla. 42, text 43, 37 South. Rep. 209, we used the following language: "Three eye witnesses to the shooting were boys aged thirteen, fourteen and sixteen years respectively, and, at the prisoner's request, they were examined by the court as to the pains and penalties of perjury. The intelligence and comprehension of these boys could be determined better by the judge who had them before him than by us, and we are

not disposed, upon the record before us, to interfere with his discretion in permitting them to testify."

This is in line with this established principle that "whether an infant of tender years has sufficient mental capacity and sense of moral obligation to be competent as a witness, is a question for the discretion of the trial judge, and his ruling in that regard will not be disturbed except in case of a manifest abuse of discretion or where the witness is admitted or rejected upon an erroneous view of a legal principle." 16 Am. & Eng. Ency. of Law (2nd ed.) 270, and authorities cited in notes; Underhill's Criminal Evidence, Sec. 205. It was also an established principle at common law that an infant under the age of fourteen years was presumptively incompetent to testify as a witness, especially in a criminal trial, and that the competency of such infant must be shown to the satisfaction of the court. "It is the duty of the court, when such a witness is offered, to examine him and ascertain whether he has sufficient intelligence and understanding of the nature and obligation of an oath to be a competent witness; and the court should carry such investigation far enough to make the infant's competency apparent." 16 Am. & Eng. Ency. of Law (2nd ed.) 267. But, as is said on page 268 of the last cited authority, "Intelligence and not age is the proper test by which the competency of such witnesses must be determined; and where it appears that an infant has sufficient intelligence to receive just impressions of the facts respecting which he is to testify, and sufficient capacity to relate them correctly, and has received sufficient instruction to appreciate the nature and obligations of an oath, he should be admitted to testify, no matter what his age." We also approve of

what is said on page 270 to the effect that "Where it appears to the presiding judge that the witness does not sufficiently understand the nature and obligations of an oath, it is within his discretion to permit the child to be properly instructed in that respect and afterward to be sworn, provided such child be of sufficient age and intellect to receive instruction."

The witness in question, according to his own testimony, was fourteen years of age, which constitutes the border line, and apparently was not possessed of a high order of intelligence. It also seems doubtful, to say the least of it, if he understood the nature and obligation of an oath. We are not prepared to declare that reversible error was permitted in permitting this witness to testify, but, as the judgment will have to be revised for other errors, to be pointed out further on in this opinion, we would suggest that at the next trial the witness be questioned more fully along the lines of his capacity and competency and that, if it seems necessary, he be instructed as to the pains and penalties of perjury and as to the nature and obligation of an oath. We have referred to the transcript of the record in the case of Griffin v. State, *supra,* and we find that the examination of the three boys who were witnesses therein is more satisfactory and convincing than in the instant case.

It should be borne in mind that the common law rule has been changed in this State and that neither belief in a Supreme Being nor in Divine punishment is requisite to the competency of a witness. See Section 5 of the Declaration of Rights of the State Constitution of 1885, which went into effect January 1, 1887, and Chapter 4036 Laws of 1891, brought forward into the General Statutes of 1906 as Section 1503, which are as follows:

"Section 5. The free exercise and enjoyment of religious profession and worship shall forever be allowed in this State, and no person shall be rendered incompetent as a witness on account of his religious opinions; but the liberty of conscience hereby secured shall not be so construed as to justify licentiousness or practices subversive of or inconsistent with the peace or moral safety of the state or society."

"1503. Atheists May Testify.—Atheists, agnostics, and all persons who do not believe in the doctrine of future rewards and punishments, shall be permitted to testify in any of the courts of this State. They may solemnly affirm instead of taking an oath, and false testifying by said persons shall be perjury, as in case of other witnesses, and shall be punished as now prescribed by law."

This being true, the cases of Jones v. State, 145 Ala. 51, 40 South. Rep. 947; White v. State, 136 Ala. 58, 34 South. Rep. 177; State v. Washington, 49 La. Ann. 1602, 22 South. Rep. 841, S. C. 42 L. R. A. 553, cited by defendants, are applicable only in part, the States of Alabama and Louisiana requiring belief in Divine punishment in order to render a witness competent.

The second assignment is abandoned.

The third, fourth and fifth assignments are argued together and we shall so treat them. Harley Jones, a witness on behalf of defendants, had testified that he and Buck Clinton slept together and that Buck Clinton was in the room on the night that the house in question was burned at the time witness went to bed. On cross-examination the following question was propounded to the witness by the State: "Do you remember going up on the train with your brother, Tom Jones, and Harry Sams was on the train, did you not make the statement that you did not

know where Clinton was on this night?" Defendants objected to the question on the ground that "said question is indefinite, and that no time is given for the alleged conversation, and further because said question is immaterial." These grounds of objection were overruled by the court and the witness then replied, "I did not make that statement." In answer to a further question the witness said, "They never asked me that question. They asked me so much about it until I cannot remember what all I have answered about that question "

As we shall see later on, the object of the state in so questioning the witness was for the purpose of laying a sufficient predicate for impeaching him.

As was said in the case of Newton v. State. 21 Fla. 53, seventh head note, "The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial. In laying the foundation for such impeachment, it is necessary to inquire of him as to the time, place and person involved in such supposed contradiction. Then the proof of the contradictions may be submitted to the jury." Also see the discussion of this point and authorities cited on page 81 of the case cited. Also see Ortiz v. State, 30 Fla. 256, text 275, 11 South. Rep. 611, text 615; Horne v. Carter, 20 Fla. 45, text 55; Simmons v. State, 32 Fla. 387, text 391, 13 South. Rep. 896, text 897. Section 1102 of Revised Statutes of 1892, Section 1511 of General Statutes of 1906, which originally formed Section 53 of Chapter 1096 Laws of 1861, which relates to the impeachment of witnesses by the opponent of the party producing them, expressly provides that before proof of contradictory statements made by a witness can be admitted, "the circumstances of the supposed statement, sufficient to designate the particular

occasion must be mentioned to the witness, and he must be asked whether or not he made such statement." All of the decisions of this court, which we have just cited, were rendered subsequent to the original enactment of such act. We are of the opinion that the question as framed was indefinite, obscure and vague and did not sufficiently inform the witness "as to the time, place and person involved in such supposed contradiction," therefore, the objections to the question should have been sustained.

Having reached this conclusion, it necessarily follows that the fourth and fifth errors, which are based upon the admission of testimony of other witnesses, over the objections of defendants, as to such contradictory statements having been made by the witness, are also well assigned.

Assignments from the sixth to the eighteenth inclusive, are practically all based upon the overruling of certain objections interposed by defendants to certain questions propounded by the State to different witnesses on behalf of the prosecution as to the respective reputations of defendants for truth and veracity and along similar lines. No useful purpose can be served by setting forth or discussing these assignments in detail.

Since the enactment of Chapter 4400, Laws of 1895, brought forward into the General Statutes of 1906, as Section 3979, the accused may be "sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses." When the accused exercises the option given by this statute of testifying as a witness he thereby puts himself on the same footing as any other witness. See Milton v. State, 40 Fla. 251, 24 South. Rep. 60, and authorities there cited; Copeland v. State, 41 Fla. 320, 26 South. Rep. 319; Pittman v. State,

51 Fla. 94, 41 South. Rep. 385; Maloy v. State, 52 Fla. 101, 41 South. Rep. 791; Wood v. State, 31 Fla. 221, 12 South. Rep. 539; 2 Wigmore's Evidence, Sec. 890; Abbott's Trial Brief, Criminal Causes (2nd ed.) 399. In other words, when the accused offers himself as a witness he may be examined, cross-examined, or impeached as any other witness. While this is true, it is also true that the State cannot introduce evidence to impeach the general character of the accused, unless the accused has first put his character in issue. Mann v. State, 22 Fla. 600. Also see Mercer v. State, 40 Fla. 216, 24 South. Rep. 154, S. C. 74 Am. St. Rep. 135; Baker v. State, 51 Fla. 1, 40 South. Rep. 673; Maloy v. State, 52 Fla. 101, 41 South. Rep. 791, and authorities therein cited. The discussion and authorities cited in Cook v. State, 46 Fla. 20, 35 South. Rep. 665, will also prove instructive.

An examination of these assignments discloses that these settled principles, or some of them, were violated in the reception of evidence against defendants and that some of the objections interposed thereto were well grounded and should have been sustained. Upon the next trial the principles which we have just enunciated should be followed.

The nineteenth assignment is as follows: "The said court erred in overruling the motion and request of the defendants for permission to get witnesses from their neighborhood to prove their good character by, and in refusing to grant defendants a short time for this purpose."

We find that at the close of the testimony in rebuttal on the part of the State, defendants expressed their surprise at the admission of testimony, over their objections, impeaching their character, and requested time to obtain

witnesses from their neighborhood to prove their good character, assuring the court that only a short time would be required for that purpose. No extended discussion of this assignment is necessary. In view of some of the testimony admitted against defendants, they may well have been surprised and unprepared to meet it with counter evidence. It is true that an application for a postponement or a continuance is addressed to the sound judicial discretion of the trial court, and the ruling of the trial court either granting or denying such application will not be reversed by an appellate court, unless an abuse of this discretion is clearly shown. Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395, and authorities there cited. However, where an abuse of this discretion is clearly shown, especially in a criminal prosecution, an appellate court will interfere in the furtherance of justice. Upon the next trial there should be no occasion for such an application upon the part of defendants.

The twentieth assignment is based upon the refusal of the court to give a certain instruction requested by defendant. Suffice it to say that we have examined this instruction and are of the opinion that it was properly refused.

The twenty-first, which is also the last assignment, is based upon the refusal of the motion of defendants for a new trial. This motion contains eighteen grounds, but some of them have already been disposed of in the discussion of the other assignments. The only grounds we deem it necessary to treat are those based upon the refusal of the court to sustain the objections of defendants to certain remarks or utterances made by counsel for the State in their arguments to the jury.

We find the following disclosed by the bill of exceptions: "Burt Fish Esq., one of the attorneys for the State

in this case, in his argument for and in behalf of the State, used the following language to the jury. 'Mr. Clinton did not come here with witnesses to sustain his character. The witnesses for this purpose are not in Oak Hill, he could not get them.' But to the use of said language and such argument to the jury, the defendants did then and there object, and moved the court to exclude same from the jury, and to protect the defendants against the use of such language to the jury upon the following grounds: There is no evidence to authorize such argument, and counsel for the State has no right under the law to argue matters not in proof, before the jury, and further, because counsel for the State has no right to comment on the failure of the defendants to have such witnesses present, and furthermore, such statements might prejudice the minds of the jury against the defendants, and lead them to believe that there was no one in the community who would sustain the general reputation of the defendants. But the said Judge did then and there overrule said objections, and refused to grant the request of the defendants. To which ruling the defendants then and there excepted.

Mr. Landis, one of the attorneys prosecuting for the State in this case, during his argument before the jury used the following language: 'The defendants were subpœnaed as witnesses in the circuit court in the case pending against Julius Dryden, and said defendants ran away and for this reason Dryden could not be tried.' But to the use of said language to the jury, the defendants then and there objected on the grounds that: there was no evidence to authorize such statements and such statements were *dehors* the record, and furthermore such statements might prejudice the minds of the jury against the defend-

ants on matters not in evidence. But the said judge did then and there overrule said objections and motion and refused to exclude such remarks from the jury or to control counsel in the argument. To which ruling the defendants then and there excepted.

Mr. Landis, one of the attorneys prosecuting for the State in this case, during his argument to the jury used the following language: 'The defendants in their testimony tell you that Ed. Murry and Marion Clinton were at the Clinton home the night of the fire. Why did not they have them here as witnesses to prove their alibi, because they could not prove an alibi by these witnesses, the testimony of these witnesses evidently was not satisfactory to them.' Marion Clinton was subpœnaed as a witness and Murry was not, by the defendants. But to the use of said language by said attorney, these defendants did then and there object, and move the court to exclude same from the jury and to instruct the jury not to regard it, on the grounds that there was no testimony in this case that would authorize such statements, and because the attorney for the State had no right to comment on the failure of the defendants to have such witnesses present or to introduce testimony. But the said judge did then and there overrule said objections and motion, and refuse to exclude said statements from the jury, and permitted counsel to continue his argument without giving him any instructions or cautioning him as to his argument. To which ruling the defendants then and there excepted.

Mr. Landis, one of the attorneys for the State in this case, during his argument to the jury, used the following language: 'We would have impeached Tom Jones, Harley Jones, Lonie Miller and Tom White, the witnesses brought here by the defendants to prove an alibi, but for

8—S C

the fact, one of them is from England, some of them from Georgia, tramping over the country not having any fixed place of abode long enough to establish a general reputation in any community.' Mr. Hilburn, in argument for the defendants, stated to the jury that these witnesses were unimpeached, and in course of his argument asked the jury why did the State not impeach them. But to the use of said language by said attorney (for the State), the defendants did then and there object, and move the court to instruct the jury not to consider such statements on the grounds that such statements are not authorized under the testimony and are *dehors* the record, and furthermore said statements tend to prejudice the minds of the jury against the defendants on matters not properly before the jury. But the said judge overruled said objections and motion, and refused to grant the request of the defendants. To which ruling the defendants then and there excepted."

No extended comment upon these utterances of counsel for the prosecution in their arguments to the jury is necessary; there is no possible warrant for them in the evidence. See Newton v. State, 21 Fla. 53, text 92 *et seq.;* Bradham v. State, 41 Fla. 541, 26 South. Rep. 730; Abbott's Trial Brief, Criminal Causes (2nd ed.) 601 *et seq.;* 2 Ency. Pl. & Pr. 727 *et seq.* The objections interposed by defendants to these utterances should have been sustained and the failure of the trial judge to do so constitutes reversible error.

The judgment must be reversed and a new trial awarded, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.