JAMES G. CROSS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed March 2, 1925.

Petition for Rehearing denied April 9, 1925.

1.  In the examination of jurors upon their *voir dire* a wide latitude of examination is allowable and may be conducted exclusively by the judge. The purpose of such examination is to ascertain the qualifications of persons drawn as jurors and whether they would be absolutely impartial in their judgment.

2.  Counsel employed in the case may upon the examination of proposed jurors upon their *voir dire* interpose objections to questions which they may deem to be improper and should in doing so state succinctly the grounds of such objections.

3.  No minimum age of competency for a witness is fixed by statute in this State. If a child has sufficient intelligence to receive just impressions of the facts respecting which he or she is to testify and sufficient capacity to relate them correctly and has received sufficient instruction to appreciate the nature and obligation of an oath, the infant should be admitted to testify.

4. Assignments of error which are not argued in the brief of counsel representing plaintiff in error will not be sustained if the error complained of is not so glaring as to require no argument to demonstrate it.

5. An instruction to the jury in a murder trial upon the subject of intoxication as bearing upon a specific intent or premeditation is not objectionable as not relating to the evidence where there was evidence tending to show that the accused had been drinking intoxicants a short while before the commission of the alleged crime.

6. An instruction to the jury favorable to the defendant upon any phase of the case is not a proper subject of complaint by him.

7. Evidence examined and found sufficient to support a verdict of manslaughter.

A Writ of Error to the Circuit Court for Nassau County; George Couper Gibbs, Judge.

Judgment affirmed.

*J. B. Stewart, Wm. A. Hallowes, Jr.,* and *Miles W. Lewis,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant Attorney General, for the State.

ELLIS, J.—During the Spring Term of the Circuit Court for Nassau County, in 1924, the plaintiff in error, hereinafter referred to as the defendant, was tried for the murder of Philip P. Lord, which was alleged to have been committed on December 25, 1923.

The defendant pleaded not guilty. There was a verdict of manslaughter and judgment entered. The defendant took a writ of error.

The tenth assignment of error rests upon an order made by the court to the sheriff during the examination of a juror upon his *voir dire,* which order related to Mr. Miles W. Lewis, one of the defendant's counsel, and directed the sheriff to "take" Mr. Lewis "unless he sits down." It is contended in behalf of the defendant that the effect of the "remark and order was to develop and create ill feeling and prejudice against defendant and defendant's counsel in the minds of the remaining jurors," eight of whom were in the jury box and served in the case.

The incident arose in the following manner: A juror named Batten was being examined by the court upon his *voir dire.* It developed that he was a friend of the defendant and had visited the latter in jail. The court asked the prospective juror if it would embarrass him to sit in the trial of his friend, the defendant. The juror replied that he did not "see why it should." The court then asked Batten if he believed beyond a reasonable doubt that the defendant was guilty of murder in the first degree would he, Batten, convict the defendant notwithstanding the fact of friendship between them. Mr. Batten replied in the affirmative. The court continuing the inquiry asked the following question: "Q. If you knew the penalty for that was death, it wouldn't make any difference, your verdict wouldn't be affected in the slightest?" The juror replying said "I don't think it ought to be." The judge replied as follows: "No, sir; it is not a question of whether it ought to be or not. It is a question of whether it would. Can you as an ordinary human being go in there and pass upon the guilt or innocence of your friend, if you believe from the evidence in the case that he was guilty, beyond a reasonable doubt, of murder in the first degree, would you vote to convict him?"

At this point the following colloquy occurred between

Mr. Lewis and the court and Mr. Hallowes, of counsel for the defendant:

"MR. LEWIS: I want to except to that question.

THE COURT: Object if you want to.

MR. LEWIS: I object to it, because it is argumentative, for the first reason.

THE COURT: I never asked you for your reasons—

MR. LEWIS: I am going to give them.

THE COURT: Sit down until I have finished, and I will hear you.

MR. LEWIS: I have a right to be heard; I am going to be heard.

THE COURT: Mr. Sheriff, take this man, if he doesn't sit down. Read the question to the juror.

(The Reporter read the question.)

THE COURT: State your objection, and the grounds of your objection, and the court will hear you at the proper time.

MR. LEWIS: My objection to that question is that it is argumentative, that it is persuasive, that it is an effort to disqualify this juror on the part of the Court; that it is leading; that it puts words in the juror's mouth, and it seeks to disqualify the juror, who, by the record, shows that he is qualified and that he is intelligent, and that he is above bias.

THE COURT: Your objection is overruled, and your exception is noted.

MR. HALLOWES: I would like to interpose this objection to the language indulged in by the court to counsel for the defendant in this case. The Supreme Court has emphatically stated that any language used by the court to the prisoner or his counsel which might tend to prejudice him in the eyes of the jury are reversible error, and the defendant at this time takes exception to the language used by the court to counsel for the defendant in this case.

THE COURT: And your objection is overruled, and your exception is noted. Answer the question."

We do not view this incident in the light in which counsel for the defense seems to regard it. Why there should have been in the incident "excitements that arouse emotions" we are unable to perceive. That there was any evidence of such on the judge's part the record fails to disclose.

The selection of a jury to try a case is a work which devolves upon the court. His purpose is to secure such jurors as are qualified for jury service and who are without bias or prejudice for or against the parties in the cause. A very wide latitude of examination by the court is allowable and indeed often necessary to bring to light the mental attitude of the proposed juror to one of the parties that it may be determined if such attitude renders the proposed juror unqualified.

The object of such examination, said this court in Savage and James v. State, 18 Fla. 909, is to ascertain the qualification of persons drawn as jurors and whether they would be absolutely impartial in their judgment.

There is nothing in the statute to prohibit the court from exclusively burdening itself with the entirety of examination of persons drawn as jurors upon their *voir dire.* See Jones v. State, 35 Fla. 289, 17 South. Rep. 284; Pinder v. State, 27 Fla. 370, 8 South. Rep. 837.

In this labor, as in other phases of the trial, counsel may be heard to interpose objections to questions which they deem to be improper and should, of course, state succinctly the grounds of such objections.

In view of the well known ability and courteous demeanor of both the judge and the counsel engaged in the trial of this case it is unnecessary for us to refer to the propriety with which all matters should be conducted in a court room and the freedom from suspicion of unfairness

and prejudice on the judge's part which should characterize all proceedings.

Counsel cannot reasonably be said to have been within his rights nor within that respectful compliance with the judge's order to be seated until the question to the proposed juror was finished that counsel should have observed when he said that he had a right to be heard and that he intended to be heard. In that statement there appeared the first suggestion of unfairness on the judge's part and an attitude of opposition to his order.

It is clearly and unmistakably inferable from the record that Mr. Lewis, who had risen to his feet, remained standing after the judge had requested him to be seated and continued on his feet as he said, "I am going to be heard." The inference is clear that he intended to be heard then in defiance of the court's order. That situation created by Mr. Lewis could admit of only one solution: either he or the judge had to yield. Mr. Lewis was in error and the judge was in charge of the proceedings. Obviously there was only one thing to do consistent with clemency and the court's dignity and that was done by the court. The record does not disclose whether Mr. Lewis even then obeyed the court's order to be seated. The question was read to the juror at the court's direction and Mr. Lewis directed by the court to state his objections and the grounds therefor which was done, the objection overruled and an exception noted.

No assignment of error is based upon the objection and exception.

Mr. Hallowes, of counsel for the defendant, objected to the "language indulged in by the Court to counsel." That objection was overruled and exception to the ruling taken. The matter of which complaint is made in the brief was not language used to counsel, but the court's order to the sheriff to compel Mr. Lewis to take his seat. The assign-

ment alleges that the order was given in an "imperative and angry tone." That assertion is not supported by the record. Imperative it may have been, although the record does not show that it was obeyed either by the sheriff or Mr. Lewis, but there is nothing in the record to show that it was given in an angry tone. We cannot assume that a judge is moved by anger when he makes an order in a case.

All orders of the court are imperative, in the sense that they are commanding, authoritative, peremptory, but it is not made clear to us what is meant by an "imperative tone" nor that such a tone is either offensive to or degrading of the person to whom addressed or in relation to whom it is made. It appears to us that the situation produced by the colloquy between the judge and counsel was one in which there was a conflict of will but not disrespect to either and in which a soft or diplomatic answer may have saved all parties from embarrassment.

We find, therefore, no reversible error in the assignment.

The eleventh assignment of error attacks the correctness of the court's ruling in admitting the testimony of the witness E. D. Rewis, a child nine years of age. It is contended that the witness was not competent because it did not appear that he understood the nature and obligation of an oath.

No minimum age of competency is fixed by our statute. If the infant has sufficient intelligence to receive just impressions of the facts respecting which he or she is to testify and sufficient capacity to relate them correctly and has received sufficient instruction to appreciate the nature and obligation of an oath, the infant should be admitted to testify. See Clinton v. State, 53 Fla. 98, 43 South. Rep. 312; Robinson v. State, 70 Fla. 628, 70 South. Rep. 595.

In admitting the child to testify in this case there was no manifest abuse of discretion by the court. The child in this case seemed to know nothing about religion, a Supreme

Being or Divine punishment but belief in none of these is essential to competency of a witness in this State. See Constitution, Declaration of Rights, Sec. 5; Sec. 2703, Revised General Statutes; 28 R. C. L. 462-463.

The testimony given by him showed an ability to receive vivid impressions of the facts as they occurred and good capacity to relate them. There was no error in admitting him to testify.

The first, second, third and fifth assignments of error are not argued in that no reason, principle or citation is given in support of them. Therefore, they will not be sustained as no glaring error appears which requires no argument to demonstrate it. See Thomas v. State, 36 Fla. 109, 18 South. Rep. 331; Lamb v. State, 50 Fla. 106, 38 South. Rep. 906; Smith v. State, 65 Fla. 56, 61 South. Rep. 120.

The court charged the jury that in "cases in which a specific or particular intent is an essential or constituent element of the offense, as it is in murder of the first degree, intoxication, although voluntary, becomes a matter for your consideration with reference to the ability of the accused to form or entertain such intent."

It is argued that as there was no evidence of the defendant's intoxication the charge was inapplicable and was prejudicial because it "impressed upon the minds of the jury that the defendant had had a few drinks." It was brought out upon the cross examination of the State's witness Carroll that the defendant had taken several drinks of whisky and it was elsewhere shown that the difficulty arose over an accusation made by the defendant that the deceased sold moonshine whisky.

The verdict was for manslaughter.

We have read all the evidence contained in the bill of exceptions and are of the opinion that it was ample to sustain conviction of a higher degree of homicide.

The defendant's attack upon the deceased was, according to some of the witnesses, unprovoked, deliberate, malicious and gave the deceased no chance for his life. It was made after the parties had had their fistic encounter, had shaken hands to be friends and the deceased had walked away. When the defendant went to his automobile where he had placed his hat and pistol and taking them in his hands, concealing the latter by the former, called the deceased back and when he approached fired upon him and killed him.

The charge was more favorable to the defendant than otherwise, and seems to have been reflected in the verdict, which was for an offense much lower in degree than the evidence would have supported.

There was no error.

The eighth and ninth assignments of error involve a like proposition and are without merit.

The fourth assignment of error rests upon the following charge given by the court: ''An act provoking a difficulty need not of necessity be an assault or a battery, but such provocation causing a difficulty may be by words or other acts.''

The charge was evidently given to apply to the account of the difficulty given by the defendant which if the jury had accepted as a truthful one must have resulted in his acquittal as, according to his story. the deceased was the aggressor by both words and acts. The charge is not amenable to the criticism made by counsel, but if it was, it was favorable to the defendant. See Smith v. State, 25 Fla. 517, 6 South. Rep. 482; Mitchell v. State, 43 Fla. 584, 31 South. Rep. 242; Vasquez v. State, 54 Fla. 127, 44. South. Rep. 739.

No error has been made to appear by the record, so the judgment of the court is affirmed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.