264 So.2d 431 (1972)
Gary HARROLD, a Minor, by His Mother and Next Friend, Mary Ann Harrold, Appellant,
v.
Herman Bartley SCHLUEP, Appellee.
No. 71-823.
District Court of Appeal of Florida, Fourth District.
July 17, 1972.
*432 Nolan Carter, of Maher, Carter & Overchuck, Orlando, for appellant.
Charles W. Abbott and Lon S. Cornelius, Jr., of Maguire, Voorhis & Wells, Orlando, for appellee.
WALDEN, Judge.
An automobile and a bicycle collided with personal injuries resulting to the bicyclist, Gary Harrold. In the ensuing negligence action jury verdict and judgment were entered in favor of the defendant-automobilist-Schluep. We reverse and remand for a new trial.
The plaintiff bicyclist was a minor who was 6 years, 2 months, and 1 week of age on the date of the accident. At trial date he was 6 years, 8 months, and 2 weeks of age.
The adult defendant testified that he was driving along a two-lane street in the day-time at 15 miles per hour. He observed the minor plaintiff riding toward him on the defendant's side of the street, close to the curb. Fifty to seventy-five feet distant from the plaintiff the defendant edged toward the centerline in order to permit the passage of the bicycle. According to defendant's version, the six-year-old plaintiff left the curbside area and headed for defendant's vehicle. According to defendant, the plaintiff was standing on the bike, shaking the wheels back and forth and generally acting "cute". Other than plaintiff and defendant, there were no witnesses as to events preceding the collision. An independent eye-witness saw the actual impact and testified that defendant's automobile thereafter dragged the plaintiff for *433 almost a block by the right fender and then the plaintiff was slung aside.
From the facts and inferences, we see that the issues were for the jury. Depending upon their analysis it could be found that either or both of the operators were guilty of negligence, at least in some degree, which proximately caused the collision.
Plaintiff's Points 2 and 3 touch upon an anomaly  a seeming incongruity  in the trial presentation. The minor plaintiff was charged with contributory negligence and deemed capable of responsibility for due care and safe conduct while on the other hand, he was judicially deemed incompetent and disqualified as a witness.
By judicial fiat it is established in Florida that a child under six years of age is conclusively presumed to be incapable of committing contributory negligence, regardless of intelligence, precocity, cultural attainments or natural aptitudes. See Swindell v. Hellkamp, Fla. 1970, 242 So.2d 708. Conversely, then, a child over six years of age must be presumed to be capable of being guilty of contributory negligence. In other words, such child is presumed capable by reason of mentality, intelligence, training, discretion and alertness of exercising care in a given situation. He is supposed to know what a reasonable man would or wouldn't do under given circumstances and is charged with knowledge of the statutes and of the traffic and safety ordinances and with the duty of honoring same. Of course in proper mitigation, the jury, in case of a child, should be charged, as was done here, with Standard Jury Charge 4.4[1] in order that the jury may be entitled to lessen the degree of responsibility and accountability to be assessed against a particular child.
In line with the above, the defendant pleaded contributory negligence on the part of the minor plaintiff as an affirmative defense and thereon adduced proofs and the jury was appropriately charged as concerns the minor plaintiff's contributory negligence. In other words, the issue of Gary's contributory negligence was correctly presented to the jury for decision in accord with the recognized law of this state.
And now we hit heavy going  the problem. The Court, after long and careful deliberation and receipt of advice from counsel, interrogated the minor plaintiff outside the presence of the jury and ruled that Gary was incompetent as a witness  that he couldn't testify. The only exposure or explanation the jury had was during the course of the formal charge the trial court advised the jury that he had determined "that he [meaning plaintiff, Gary Harrold] is not legally competent to testify." The ruling was based on this colloquy:
BY THE COURT:
"Q What is your name?
A Gary Reynard Harrold.
Q Do you know how to spell your name? Do you know how to spell Harrold?
A (Shakes head)
Q You do not?
A (No response)
Q Gary, how old are you now?
A Six.
Q Do you know what your birthday is?
A (Shakes head) No.
Q You do not? What is your mother's name?
A Mary Ann Harrold.
Q Is that your mother over there?

*434 A Yes.
Q Did you go to the first grade in school?
A Yes.
Q What school did you go to? Can you talk a little louder?
A Holden Street.
Q I see. Do you know what your teacher's name was?
A Miss Harnford.
Q Miss Harnford?
A (Nods head)
Q Gary, do you know what an oath is?
A (Shakes head) No.
Q Do you know what happens to people who tell lies?
A No.
Q You don't know what happens if you tell a lie?
A (Shakes head)
MR. ABBOTT: Let the record reflect he shook his head no.
THE COURT: You have it in the record that he shook his head in the negative. All right."
* * * * * *
EXAMINATION BY COUNSEL:
"Q Gary, if you will speak up, and don't nod your head, Say yes or no to the questions, will you?
A No.
Q Will you say yes or no when I ask you a question?
A Yes.
Q All right. Gary, do you know what it means to tell the truth?
A No.
Q What?
A No.
* * * * * *
THE COURT: All right, Gary, thank you very much. Your mother can take you back to the witness room now.
The Court is going to hold that the witness does not understand the sanctity or importance of the oath and has stated today that he doesn't even know what it means to tell the truth and doesn't know what happens to people who tell lies. I think that it is obvious that he is not qualified to testify."
Thus, we see plaintiff's dilemma which, reframed, results from the decision that Gary is competent and intelligent enough to be contributorily negligent, but incompetent and insufficiently intelligent to testify.
Looking about for an answer in our less strained atmosphere and hindsight advantage of the appellate process, we first reject the contention that testamentary and negligence capabilities are necessarily linked. It is argued that, if Gary is incompetent to testify, it must absolutely follow as a matter of law that he is incapable of contributory negligence. We simply disagree because the governing criteria in the two situations are different. Secondly, such a rule, if announced, would result in manifest injustice to defendants in some cases. It is our hypothesis that there are many instances and fact patterns where a person at trial time may truly not be competent to testify, yet, at accident time such person was competent and capable of negligent acts of commission and omission.
We think there is an answer to the problem and that it lies in the discretion and methods to be employed in determining the competency of Gary to testify.
Intelligence and the ability to understand are the prime test of competency of children to testify, not age. Bell v. State, Fla. 1957, 93 So.2d 575; Swain v. *435 State, Fla.App. 1965, 172 So.2d 3. Children are competent where they have sufficient intelligence to receive just impressions of the facts about which they are to testify and the capacity to relate those facts correctly. Cross v. State, Fla. 1925, 89 Fla. 212, 103 So. 636. Additionally, the child must appreciate the nature and obligation of the oath before he is allowed to testify. If he does not understand the nature of the oath, it is up to the trial court's discretion to instruct him regarding the nature and obligations of the oath. In Clinton v. State, 1907, 53 Fla. 98, 43 So. 312, the Supreme Court, while reversing on other grounds, suggested that "... at the next trial the witness be questioned more fully along the lines of his capacity and competency, and that, if it seems necessary, he be instructed as to the pains and penalties of perjury and as to the nature and obligation of an oath." 53 Fla. at 106, 43 So. at 315. Indications are that the court need only explain to the witness the necessity to tell the truth and the consequences of lying. See Annot. 81 A.L.R.2d 386 (1965). The child need not understand the penalties of perjury. It is sufficient if, as in Ferrer v. State, Fla.App. 1960, 117 So.2d 529, the child, who may not know what will happen to him if he does "tell a story," at least thinks something will happen to him. Furthermore, there is no requisite religious belief, or belief in a Supreme Being or in Divine punishment for competency as a witness. Clinton v. State, supra.
We would suppose and fairly, we believe, that any six year old child, being brought into the unfamiliar environment of a courtroom and faced with a crowd of strangers and adult terminology, would be necessarily afraid, shy, and ill at ease (as indeed are some adults).
While we admire the effort and concern evinced by the able trial court in this instance, our comparision of the colloquy in the light of the legal standards and procedures just above delineated leaves us convinced that something further was required by the trial court. We suggest that more determined and special effort could and should have been made to qualify the minor plaintiff as a witness. We tender these expressions mindful of the fact that the plaintiff's claim for recompense very largely lies in balance and feel that, if legally possible, such plaintiff should have had the opportunity to deny the defendant's testimony as to his inappropriate bicycle handling or to explain it and to shed such light as he could as to the way the collision happened. Unless this is done the jury will be left with only the defendant's version. Secondly, we feel that it is highly critical that the jury should have had the opportunity to view and hear the minor plaintiff upon the witness stand, in order that they might have the fullest basis for applying Standard Jury Instruction 4.4, supra.
Of course, if on remand the minor plaintiff should prove qualified as a witness, the jury can judge the weight they wish to accord this testimony based upon his age, understanding and the usual factors.
Finally, plaintiff for his Point I urges that pleadings, not admitted into evidence, may not be used in argument of counsel.
Defendant's attorney, over plaintiff's timely objection, read excerpts of plaintiff's complaint in his closing argument, which complaint had not been admitted into evidence. This was done to somehow impeach and question the veracity of the only independent witness to the collision and aftermath.
Closing argument is restricted to the evidence and issues presented and the inferences which can be drawn from the evidence. Westbrook v. Bacskai, Fla.App. 1958, 103 So.2d 241, a personal injury case, held that counsel can not argue facts not in evidence or not warranted by the evidence.
Pleadings are not admissible in evidence to prove or disprove a fact in issue. Hines v. Trager Construction Co., Fla.App. *436 1966, 188 So.2d 826, approved a trial court's denial of the plaintiff's request to offer into evidence portions of the defendant's crossclaim. It was there commented that "[s]o long as the pleadings in a cause are merely a tentative outline of the position which the pleader takes before the case is fully developed on the facts, then it should be held that the pleadings are inadmissible as evidence to prove the facts alleged therein." 188 So.2d at 831.
Dowling v. Nicholson, 1931, 101 Fla. 672, 135 So. 288, held it was error to admit portions of defendant's pleas in evidence to prove fact issues in the case. There is a distinction between admission of prior pleadings and pleadings in a case in issue. In a recent decision, Davidson v. Eddings, Fla.App. 1972, 262 So.2d 232, the First District Court of Appeal held that pleadings filed in another lawsuit containing allegations or admissions against interest are admissible as evidence in later suits, if relevant, to impeach a party or witness. This is true even if they are unverified or unsigned, so long as it is shown the party or witness to be impeached supplied the information in the prior pleading.
The rule enunciated in Davidson v. Eddings, is not applicable in the case at bar because the pleadings here were those at issue. Under established Florida law, the plaintiff's complaint was not admissible in evidence. Counsel should not have been permitted to read portions of the complaint in his final argument for two reasons. First, the complaint was not in evidence and, second, it would have been inadmissible even if offered.
The appealed judgment is reversed and remanded for a new trial to be conducted in accordance with the views herein expressed.
Reversed and remanded.
REED, C.J., and MAGER, J., concur.
NOTES
[1] Standard Jury Instruction 4.4, "NEGLIGENCE OF A CHILD. Reasonable care on the part of a child is that degree of care which a reasonably careful child of the same age, mental capacity, intelligence, training and experience would use under like circumstances."